# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

THE CICERO LUMBER COMPANY

*v.*

THE TOWN OF CICERO *et al.*

*Opinion filed October 24, 1898.*

1. STREETS AND ALLEYS—*limiting use of street to pleasure driveway is not a violation of public trust.* Limiting the use of a street to a pleasure driveway, under authority of a general act of the legislature, is not a violation by the municipality of the trust upon which it holds such street for the public, as the legislature has full control of public streets, subject only to constitutional restrictions and the private rights of property owners.

2. SAME—*the right to use traffic wagons on every street is not a property right.* The property rights of parties in a public street, which the legislature must respect, are ordinarily such rights and easements as they have by virtue of their being owners of abutting property, and do not include the right to use every kind of a vehicle thereon.

3. CONSTITUTIONAL LAW—*the act of 1889, concerning pleasure driveways, is constitutional.* The act of 1889, (Laws of 1889, p. 83,) which empowers municipal corporations to set apart not exceeding two streets for pleasure driveways and to exclude traffic wagons therefrom, is not unconstitutional, as depriving the public of their property rights in such street without due process of law.

4. MUNICIPAL CORPORATIONS—*ordinance vesting arbitrary power in board of trustees is unreasonable.* An ordinance creating a pleasure driveway, under the act of 1889, which forbids the use of heavy vehicles thereon except "upon special permission" of the board of

trustees, without prescribing any general conditions upon which such permission shall be granted, is unreasonable and invalid, as vesting the board with arbitrary power.

5. INJUNCTION—*bill to enjoin enforcement of illegal ordinance—when partial validity is no defense.* The fact that the invalid portion of an ordinance might be so separated from the valid portion as to enable the latter to stand, is no defense to a bill to enjoin the prosecution of complainant's servants for violating the illegal portion.

6. SAME—*when a bill to enjoin a breach of public trust shows a special damage.* A bill by a lumber company to enjoin the prosecution of its teamsters for driving traffic wagons on a pleasure driveway contrary to ordinance without permission of the trustees, shows a special damage, where it alleges that the only street, other than the pleasure driveway, over which it has an outlet has been rendered impassable by the construction of a public improvement therein, and that, the use of heavy wagons being necessary and the right to use them on the pleasure driveway being forbidden, the business of the company is thereby injured and destroyed.

7. SAME—*equity may enjoin enforcement of invalid ordinance to prevent irreparable injury.* A court of equity has jurisdiction to enjoin the enforcement of an invalid ordinance when necessary to prevent an irreparable injury.

8. COSTS—*when defendant should bear costs on dismissal of bill for an injunction.* Where, under the case made by a bill to enjoin a municipal corporation from enforcing an invalid ordinance, the complainant is entitled to the relief prayed, but the defendant, by repealing the ordinance, removes the ground of complaint, the latter, in the absence of any agreement, should bear the costs upon the dismissal of the bill, even though the complainant's contention that the act under which the ordinance was passed was unconstitutional could not have been sustained.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

The original bill in this case was filed by the appellant on June 9, 1896, against the town of Cicero, and Lewis E. Hansburry, captain of police of the town of Cicero, to enjoin the prosecution of appellant's teamsters by the officers of said town for violations of the town ordinance, prohibiting traffic teams upon Austin boulevard. The bill alleges, that appellant is a corporation, having its place of business in the town of Cicero, and is a citizen and tax-payer of that town, and engaged in dealing

in lumber and other building material; that its lumber
yard is located on Central avenue in said town just south
of, and adjacent to, the Wisconsin Central railroad; that
Central avenue is a street, running north and south from
the north line of the town to Twenty-second street, which
latter street runs east and west through the town and
about a mile and a half south of complainant's place of
business; that Central avenue, at the time of the location
of appellant's yards at the place above mentioned, was a
well improved street, which fact influenced appellant in
locating its yards at that place; that appellant is obliged
to deliver lumber and other building material, sold by
it, by teams and wagons, and to load its wagons heavily;
that it cannot conduct its business, except by using paved
or improved streets; that the soil in Cicero is of such a
character that roads suitable for heavily loaded wagons
cannot be made from it; that appellant, with other citi-
zens of the town engaged in business similar to appel-
lant's business, and doing business in that neighborhood,
has expended large sums of money in improving Central
avenue; that the town of Cicero is engaged in building
a sewer six feet in diameter on Central avenue, and in
building the same, is digging a trench from eighteen to
twenty feet deep, and is depositing the materials taken
from such trench on the roadway of Central avenue, and
thereby destroying said roadway; that said sewer has
progressed to a point on said avenue about half a mile
south of appellant's place of business, and, as it proceeds
north, will pass the same and obstruct all means of ac-
cess thereto from Central avenue; that, a short distance
north of appellant's place of business, is the embankment
of an old abandoned railroad, which is graveled, so as
to make an excellent roadway from a point near appel-
lant's yards to Austin avenue or boulevard for heavy
teaming; that appellant has made arrangements with
the proprietors of said embankment to use the same from
its yards to Austin avenue; that Austin avenue is an im-

proved highway, extending north and south, and located about half a mile west of appellant's place of business; that there is no street between Central avenue and Austin avenue running north and south, so as to give appellant an outlet from its place of business, and that there is no street running east and west from Central avenue between Madison street and Twelfth street; that Austin avenue has been a public highway, and was such for more than twenty years prior to January 16, 1892, and as such highway was open and used for ordinary travel, passage and traffic without distinction; that, along the line of certain railroads south and north of appellant's business, are certain villages where public and private improvements have been carried on, and that the principal part of appellant's business consists of selling and delivering lumber and other material to be used in these improvements whereby appellant makes large profits; that, prior to the digging of the said sewer, appellant used Central avenue as a means of access to its lumber yards and thereby reached said villages in connection with certain streets running east and west; that, since Central avenue has become impassable, appellant has been obliged to use Austin avenue.

The bill then alleges that, on January 16, 1892, the board of trustees of said town, acting under an act of the legislature entitled "An act to provide for pleasure driveways in incorporated cities, villages and towns," approved March 27, 1889, passed an ordinance, ordaining that Austin avenue from the north line of Twenty-second street to the south line of Morgan boulevard in the town of Cicero be "designated as a public driveway to be used for pleasure driving only, pursuant to the statute in such case made and provided," which ordinance did not prohibit traffic teams thereon, nor impose any penalty for the violation thereof; that, on May 23, 1896, said board of trustees passed an ordinance, entitled "An ordinance in reference to Washington boulevard and Austin boule-

vard in the town of Cicero," in and by which last named ordinance it is provided among other things as follows: "All persons are also forbidden to solicit patronage for any vehicle for hire upon either of the said boulevards; to drive or to take any omnibus or heavy public vehicle, or any traffic vehicle, whether propelled by man, animal or other power, upon either of the said boulevards, except private wagons conveying families, or upon special permission of this board," which ordinance also imposed a penalty of from $5.00 to $100.00 for each violation of its provisions.

The bill further alleges that, by said act of 1889, the powers therein conferred upon cities, villages and towns shall only be exercised when the corporate authorities thereof are petitioned thereto by the owners of more than two-thirds of the frontage of land fronting upon said proposed pleasure driveway; and that no petition was ever presented to said board of trustees, asking that said Austin avenue be designated as a pleasure driveway between the termini mentioned in the ordinances above named, as required by said act; and that said board were without authority and power to pass said ordinances; and that the same are void.

The bill further charges, that the act of 1889 above named is unconstitutional and void upon the alleged ground, that Austin avenue was, for twenty years prior to its passage, a public highway open for travel of all kinds for which highways are used, and that thereby the right so to use the same was vested in all the citizens of Illinois, and particularly the citizens of said town; that the legislature was without power to divest any of said citizens of such vested right, and that such act is in conflict with sections 2 and 13 of article 2 of the State constitution, and therefore void.

The bill further alleges, that appellant for many years has conducted a profitable business and spent a large amount of money in building houses on its yard and oc-

cupying the same for business, and in purchasing teams
and wagons, and that the only way now open to it for
the delivery of material, which it sells, is by way of Aus-
tin avenue and the said abandoned railroad embankment;
that, if it is not permitted to use Austin avenue, its busi-
ness will be completely ruined, and the money invested
by it lost, and it will suffer irreparable injury; that, by
said ordinances, traffic teams, like those used by appel-
lant, are prohibited from traveling upon said Austin ave-
nue, and a penalty is imposed on all persons violating the
provisions of said ordinances; that the police authorities
of said town have arrested appellant's employes driving
its traffic teams on Austin avenue, and put appellant to
great loss, inconvenience and damage; that, about May
23, 1896, the police officers of said town arrested six of
the employes of the appellant for driving traffic teams on
said avenue, and afterwards abandoned their prosecution;
that, after the passage of the ordinance of May 23, 1896,
said police officers have arrested three of appellant's em-
ployes for driving traffic teams on Austin avenue; and the
prosecution of said arrests has been continued at the re-
quest of the town to June 10.

The bill further alleges, that there are may persons
in the same situation as that of the appellant; that the
enforcement of said penalties will affect a great many of
such persons; that the prosecutions for the violation of
said ordinances will result in a multiplicity of suits not
only against appellant, but also against many other per-
sons; that the officers and police authorities of said town
threaten to further enforce said penalties and arrest ap-
pellant's employes, when found violating the provisions
of said ordinances; that, if said threats are carried into
effect, irreparable loss and injury will be sustained by
appellant, and there will thereby result a multiplicity
of suits against appellant and its employes, which will
greatly injure it, and against which it has no adequate
remedy at law. The bill furthermore alleges, that the lia-

bility, if any, for such prosecutions rests on the individuals, claiming the right to enforce said ordinances and penalties, and who, in fact, enforce the same.

On June 10, 1896, the appellees entered their appearance, and filed a general and special demurrer to the bill and a number of affidavits in opposition to the motion for an injunction. The motion for an injunction was referred to a master in chancery.

On June 13, 1896, an amendment was filed to the bill, setting up that, by the terms of the ordinance of May 23, 1896, it was ordained by the town, that Austin boulevard should be used for pleasure drives only, and that all persons were forbidden to take any omnibuses or heavy public vehicle or any traffic vehicle, whether propelled by man, animal or other power upon said boulevard, except upon the special permission of said board of trustees, and that any person, violating said ordinance, should pay a fine of not less than $5.00, nor more than $100.00, for each offense; that said ordinance, in so far as it forbade persons to take traffic teams upon said avenue except upon special permission of said board, is unreasonable, unlawful, oppressive, unfair, partial and not general, and, therefore, illegal and void. The amendment to the bill alleges, as did the original bill, the unconstitutionality of the act of 1889, and the void character of the ordinances passed thereunder; also, that Hansburry and the police officers of the town, being the persons who enforced said penalties, and who made the arrests thereunder, and threaten to continue to make arrests, especially of appellant's employes when they drive traffic teams on said Austin avenue, are insolvent, and unable to respond in damages to any amount, which appellant may recover against them in an action at law, and that any judgment against them for damages, by reason of the enforcement of said penalties and the trespasses thereby committed, would be unavailing to appellant and wholly lost to it. The prayer of the bill is, that said town, and its captain of police and other

officers, may be enjoined from enforcing said penalties against appellant and its employes, and from prosecuting them for violations of the provisions of said ordinances; that said ordinances may be declared illegal and void, and said act may be declared unconstitutional and void.

On July 15, 1896, the master made a report, in which he found that the appellant was entitled to the injunction asked for, and in which he recommended that a decree be entered in accordance with the prayer of the bill. Objections were filed to the master's report, which were overruled by him. On the hearing of the application for the injunction before the master, various affidavits were filed by appellant and by appellees, to which said ordinances and various proceedings of said board were attached as exhibits.

On January 11, 1897, the demurrer of the defendants below to the bill was overruled, and the defendants answered the amended bill denying the material allegations thereof. Replication was filed to said answer.

On July 27, 1896, one of the solicitors of the appellees filed an affidavit, stating that all the prosecutions, theretofore brought by the town of Cicero against violators of said ordinance of May 23, 1896, which prosecutions were sought to be restrained by the appellant, had been dismissed; and that the said ordinance of May 23, 1896, had been repealed by an ordinance passed on July 27, 1896, by said board and approved by its president, a copy of which was attached to said affidavit; and that, after the repeal of said ordinance of May 23, 1896, there was duly passed a new ordinance, regulating the use of said boulevards in said town, a certified copy of which last mentioned ordinance was also attached to said affidavit, and showed that said new ordinance of July 27, 1896, was substantially the same as the old ordinance of May 23, 1896, except that there was left out of it the clause objected to by appellant in its amended bill, to-wit: "or upon special permission of this board." Thereupon, appellant filed a

supplemental bill, setting up the fact of the repeal of the ordinance of May 23, 1896, and of the passage of the new ordinance of July 27, 1896, and the fact of the dismissal of the prosecutions against its teamsters, as set forth in the affidavit of the solicitor of appellees. The supplemental bill then avers, "that said matters and things so set up in said affidavit are true; that complainant is advised by counsel, that the dismissal of said suits and the repeal of said ordinance is in effect and law a confession by the said defendants, that the material allegations in said amended bill are true, and charges that such action on the part of the said defendants is in fact and law such a confession; * * * that the action taken by said defendants in dismissing said suits and in repealing said ordinance finally puts an end to the causes of litigation and matters in controversy mentioned in said amended bill, and the same cannot be further prosecuted, and the same should and ought to be dismissed at the cost of the said defendants." The supplemental bill then prays that the amended bill be dismissed without prejudice to the appellant, and at the cost of the defendants. The defendants below, the appellees here, demurred to the supplemental bill, but their demurrer was overruled, and the appellees were ordered to plead or answer in ten days. In their answer to the supplemental bill the appellees denied, that the dismissal of said prosecutions was a confession on their part of the truth of the allegations in the original and amended bills, but averred that the dismissal of said prosecutions was caused in order to save the appellant the expenses and annoyance occasioned thereby, and that it was the sole object of appellees to protect and preserve Austin boulevard as a pleasure driveway and prevent the destruction of the pavement thereby. Said answer admits the repeal of the ordinance of May, 1896, and the passage of the new ordinance of July, 1896, and insists that both ordinances were valid, and furthermore sets forth that, since the filing of the bill, the town of

176—2

Cicero, at great expense, built a plank roadway upon Central avenue, connecting it with improved streets running east and west, by which the appellant has full and free access to all parts of the town, and in making the same expended the sum of $1800.00. Appellees furthermore insist in their answer, that the only question involved is a question of costs, and that appellant should pay all the costs.

The objections to the master's report were by agreement allowed to stand as exceptions thereto; and such exceptions coming on to be heard were sustained by the court. The court found, that appellant was not entitled to the relief prayed in its bills, and ordered that the original, amended and supplemental bills be dismissed for want of equity, and that the appellees recover from the appellant the costs and have execution therefor.

The present appeal is prosecuted from the order of the circuit court, dismissing the original, amended and supplemental bills at the costs of appellant, the complainant below.

WHITEHEAD & STOKER, and CUTTING, CASTLE & WILLIAMS, for appellant.

GEORGE B. FINCH, and F. W. PRINGLE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

As will be seen from the statement preceding this opinion, the only question involved in this case is a question of costs. The court below dismissed the original, amended and supplemental bills at the costs of the appellant here, which was the complainant below. The appellant insists, that the bill should have been dismissed at the costs of the present appellees, who were the defendants below. In order to determine whether the costs should have been paid by the appellant or by the appellees, it is necessary

to consider whether the original and amended bills of the appellant presented such equities as entitled it to relief. (*Booth* v. *Gaither*, 58 Ill. App. 263).

*First*—It is charged by the appellant in the original and amended bills, that the act entitled "An act to provide for pleasure driveways in incorporated cities, villages and towns," approved March 27, 1889, in so far as it authorizes the corporate authorities of such municipalities to take public highways for pleasure driveways, and gives them power to prohibit traffic teams thereon, and to impose penalties for the violation of ordinances prohibiting the travel of such teams thereon, is unconstitutional and void; and that any ordinance passed by any city, village or town under and in pursuance of said act is also illegal and void as being based thereon. The first question, therefore, presented for our consideration is whether or not the act of March 27, 1889, is constitutional.

Section 1 of the act provides "that the city council in cities, the president and the board of trustees in villages or the board of trustees in incorporated towns, whether incorporated under the general law or special charter, shall have the power to designate by ordinance the whole or any part of, not to exceed two streets, roads, avenues, boulevards or highways, under their jurisdiction, as a public driveway, to be used for pleasure driving only, and to improve and maintain the same, and also to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve and maintain not more than two roads, streets or avenues, and designate the same as pleasure driveways, to be used for pleasure driving only: *Provided*, said powers shall only be exercised when said corporate authorities are petitioned thereto by the owners of more than two-thirds (⅔) of the frontage of land fronting upon said proposed pleasure driveways."

Section 2 of said act provides, that "said pleasure driveways may be laid out, extended and improved under the provisions of article 9 of an act to provide for the in-

corporation of cities and villages, approved April 10, 1872, in force July 1, 1872, and any and all amendments thereto."

Section 3 of said act provides, that "said corporate authorities may, by ordinance, regulate, restrain and control the speed of travel upon said pleasure drives, and prescribe the kind of vehicles that shall be allowed upon the same, and in all things may regulate, restrain and control the use of said pleasure driveways by the public or individuals, and may exclude therefrom funeral processions, hearses and traffic teams and vehicles, so as to free the same from any and all business traffic or objectionable travel, and make the same a pleasure driveway for pleasure driving only, and may prescribe in such ordinances such fines or penalties for the violation thereof as they are allowed by law to prescribe for the violation of other ordinances." (Sess. Laws of Ill. 1889, p. 83).

The town of Cicero, one of the appellees herein, is an incorporated town created by a special act of the legislature. (3 Private Laws of Ill. 1869, p. 666). By its charter the town of Cicero has, among others, the following powers: "To control and regulate the highways, streets, alleys and public places and abate any obstructions, encroachments or nuisances thereon.  *  *  *  The board of trustees shall have power from time to time, first, to open and lay out any new street, alley or highway, and to cause any street, alley or highway to be altered, widened, extended, laid out, vacated, bridged, graded, macadamized, paved, planked, clayed, graveled or otherwise improved, and keep the same in repair."

It will be observed that, by section 1 of the act of 1889, not to exceed two streets or roads can be used for pleasure drives only; that is to say, the municipality may set apart and designate one or two streets as pleasure driveways, but not more than two. This restriction as to the number of streets or roads to be designated as pleasure driveways leaves all the other streets and roads in the municipality to be used for general travel and for traffic teams.

It is also to be observed, that the power to set apart a street or road as a pleasure driveway can only be exercised, when the corporate authorities are petitioned thereto by the owners of more than two-thirds of the frontage of land, fronting upon said proposed pleasure driveways. The power of the corporate authorities is thus limited and restrained by the wishes of a large proportion of the property owners, whose property fronts upon the road or street to be converted into a pleasure driveway.

Counsel for appellant take the ground, that the right of each citizen to travel on and use the common public highways with an ordinary vehicle in the prosecution of his lawful business is a property right, of which he can not be deprived without due process of law. They also contend that, when this right is taken from the citizen by the provisions of the above act, there is thereby a taking of private property for public use without just compensation. In other words, counsel invoke, in favor of their contention that the act is unconstitutional, sections 2 and 13 of article 2 of the constitution. (1 Starr & Curt. Ann. Stat.—2d ed.—pp. 100, 113). Counsel furthermore refer to many decisions, which hold that the fee of the streets in cities or incorporated towns is held in trust by the corporation for the benefit of the public; and that a limitation of the use of such a street to the purposes of a pleasure driveway, instead of general traffic, is a violation of the trust.

Such an act, as the act of 1889, does not in any way deprive a citizen of his property without due process of law, or take or damage private property for public use without just compensation, or involve any violation of trust upon the part of the municipal authorities.

"The legislature of the State represents the public at large, and has, in the absence of special constitutional restraint and subject  *  *  *  to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places." (2 Dillon

on Mun. Corp.—4th ed.—sec. 656). "The plenary power of the legislature over streets and highways is such, that it may, in the absence of special constitutional restrictions, vacate or discontinue them, or invest municipal corporations with this authority. Without a judicial determination, a municipal corporation, under the authority conferred by its charter to locate and establish streets and alleys and to vacate the same, may constitutionally order a vacation of a street; and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner, claiming that he is interested in keeping open the streets dedicated to the public." (Ibid. sec. 666).

While it is true that the public highways are for the use of the general public, it is at the same time true that the legislature is a representative of the public at large. As such representative, it may grant the use or supervision and control over the highways to a municipal corporation, so long as the highways are not diverted to some use, substantially different from that, for which they were originally intended. There is no special restriction in the constitution of this State upon the power of the legislature in this regard. A city or incorporated town not only bears a property or private relation to the State, but it also bears a political relation thereto. In its political relation, it is merely an agency of the State. The municipal corporations of the State are the mere creatures of the State, and exist by the authority of the legislature and subject to its control. Hence, when a city or incorporated town holds a street for the benefit of the public, it holds it for the benefit of that entire public, of which the legislature is the representative. As the municipality is a mere agent of the State, the legislature can direct the manner, in which it shall control the streets within its limits. The property rights and easements, which the municipality has in public streets and ways, are held by it at the will of the legislature. Of course,

this statement is subject to the further statement, that such property, as the municipality holds in its private capacity, is as much protected by the constitution as the property of the private citizen. But, so far as it holds property as a mere agency of the government of the State, the constitutional provisions above referred to have no application, because the State can control the agencies created by it for the purposes of government. An act, which limits the use of a street to the purposes of a pleasure driveway, is, in no sense, class legislation. All the citizens are entitled to the use of the street for the purpose of a pleasure driveway. Neither the act of 1889, nor the ordinances passed by the town of Cicero in pursuance thereof, unjustly discriminate between the rights of citizens to travel over Austin avenue, or other streets of the town. The act is general in its operation upon all citizens, who may think proper to employ their vehicles for other than traffic purposes over the street or streets of the city or town designated as pleasure boulevards. When an ordinance imposes restrictions upon citizens of a particular part of the city, or grants a particular privilege to a particular part of the citizens, not given to all others, then it may be obnoxious to the charge of making an unjust discrimination between the citizens; but the act here under consideration is not subject to any such charge.

Section 22 of article 4 of the constitution provides, that the General Assembly shall not pass local or special laws "vacating roads, streets, alleys and public grounds." This provision of the constitution recognizes the right of the General Assembly to vacate roads and streets, provided that it does so by general laws, and not by local or special laws. Of course, the right of the legislature to vacate streets is subject to the condition, that such vacation is not for the benefit of private parties, or for the purpose of devoting the streets so vacated to private uses. The right of the municipality to vacate the street is to

be exercised only when the municipal authorities, in the exercise of their discretion, determine that the street is no longer required for public use and convenience. (*Smith* v. *McDowell*, 148 Ill. 51). The power to vacate or discontinue a street, qualified in the manner thus stated, necessarily involves the power to change the use of the street. The greater power of absolutely vacating necessarily includes the lesser power of regulating or restraining. If, therefore, the legislature had the power to confer upon the town of Cicero the authority to vacate one of its streets, it certainly had the power to confer upon that municipality the power to limit the use of a street to a particular purpose benefiting all the public, and not exclusively shared by any class of the citizens.

In *People* v. *Walsh*, 96 Ill. 232, it was held, that it is competent for the legislature to transfer the control of a street in a city or village to park commissioners, to be by them improved and controlled for boulevard and park purposes, where such purposes are not inconsistent with their use for ordinary travel. In *People* v. *Walsh*, *supra*, the case of *People* v. *Kerr*, 27 N. Y. 188, was referred to with approval and the following quotation was made therefrom: "So far as the existing public rights in these streets are concerned, such as the right of passage and travel over them as common highways, a little reflection will show that the legislature has supreme control over them. When no private interests are involved or invaded, the legislature may close a highway and relinquish altogether its use by the public, or it may regulate such use or restrict it to peculiar vehicles, or to the use of particular motive power. It may change one kind of use into another, so long as the property continues devoted to public use. What belongs to the public may be controlled and disposed of in any way which the public agent sees fit." (*City of Chicago* v. *Rumsey*, 87 Ill. 348; *City of Chicago* v. *Union Building Ass.* 102 id. 379). It is said by Dillon, in his work on Municipal Corporations, (4th ed. sec. 657): "As respects the public

or municipalities, there is, in the absence of special constitutional restriction, no limit upon the power of the legislature as to the uses to which streets may be devoted." This court held to the same effect in *Meyer* v. *Village of Teutopolis*, 131 Ill. 552. (*True* v. *Davis*, 133 Ill. 522; *Barrows* v. *City of Sycamore*, 150 id. 588; *Simon* v. *Northup*, 27 Ore. 487).

This court has in many cases recognized the power of the city of Chicago to turn over a particular street to the control of park commissioners, and to permit the use of the street to be regulated and governed by such commissioners. These cases concede the power of the legislature over the public streets, and its right to change the possession and control of the same when private rights are not violated. Ordinarily, such private rights are the rights of abutters, or property owners owning property fronting upon such street, and not the rights of citizens as to the character of the vehicles which they may drive over the streets. (*McCormick* v. *South Park Comrs.* 150 Ill. 516; *West Chicago Park Comrs.* v. *McMullen*, 134 id. 170).

There is nothing unreasonable in excluding traffic teams from a street designated and intended to be a pleasure driveway. Such a driveway must be constructed and paved in a particular manner; and if heavy teaming is allowed, injury would result and frequent repairing would be made necessary. Neither can it be said that pleasure and recreation are not as much for the good of the people as business and traffic. (*Barrows* v. *City of Sycamore, supra*).

The legislative authority to do what is here objected to was conferred upon the town of Cicero under its charter before the passage of the act of 1889. But the act gave further protection to the rights of the people by requiring the assent of the owners of more than two-thirds of the frontage upon the street.

Our conclusion is that the act of 1889 is not unconstitutional for any of the reasons here urged against its validity.

*Second*—It is next insisted by appellant, that the ordinances of January 16, 1892, and of May 23, 1896, passed by the board of trustees of the town of Cicero, were illegal and void upon the alleged ground that no petition was presented to the corporate authorities of the town by the owners of more than two-thirds of the frontage of the land between the termini mentioned in said ordinances; and that the said ordinances are uncertain, unreasonable, not general and not impartial, as reserving to the corporate authorities the privilege of enforcing them or not at their pleasure.

The exhibits attached to the affidavits and answers show, that petitions were filed for converting Austin avenue into a boulevard between the termini named in the ordinances; that these petitions were referred to a committee for verification; that such committee reported that all the signatures thereto had been verified, and that the signatures of the petitioners represented more than two-thirds of the frontage. The act of 1889 does not specify any particular kind of petition, and does not require that the petition shall be a single document. It appears here, that the town board was petitioned by the owners of more than two-thirds of the frontage of land fronting upon the driveway; and we are inclined to the opinion, that the town board was sufficiently and legally petitioned to designate Austin avenue as a pleasure driveway between the termini mentioned in the ordinances.

But the other ground, upon which the ordinance of May 23, 1896, is attacked as invalid, is of a more serious character. By the ordinance of May 23, 1896, all persons are forbidden to take any omnibus or heavy vehicle or any traffic vehicle upon either of the boulevards therein named, except private wagons conveying families, "or upon special permission of this board." The meaning of this provision is, that all traffic vehicles, except private wagons conveying families, are only forbidden the use of the boulevards in case their owners do not obtain the

special permission of the board of trustees. In other words, the discretion is lodged with the board of trustees to permit or not to permit traffic vehicles to be used upon the boulevards in question. The ordinance, in so far as it invests the board of trustees with the discretion here indicated, is unreasonable. It prohibits that which is, in itself and as a general thing, perfectly lawful, and leaves the power of permitting or forbidding the use of traffic teams upon the boulevards to an unregulated official discretion, when the whole matter should be regulated by permanent local provisions operating generally and impartially. The ordinance is not general in its operation. It does not affect all citizens alike, who use traffic vehicles. It is only persons driving traffic vehicles upon the boulevards without the permission of the board of trustees, who are subjected to the penalties of the ordinance. The ordinance in no way regulates or controls the discretion vested thereby in the board. It prescribes no conditions, upon which the special permission of the board is to be granted. Thus, the board is clothed with the right to grant the privilege to some, and to deny it to others. Ordinances, which thus invest a city council or a board of trustees with a discretion which is purely arbitrary, and which may be exercised in the interest of a favored few, are unreasonable and invalid. The ordinance should have established a rule by which its impartial enforcement could be secured. This position is sustained by the weight of authority. (*City of Chicago* v. *Trotter*, 136 Ill. 430; *Rich* v. *City of Naperville*, 42 Ill. App. 222; *In re Frazee*, 63 Mich. 396; *Plymouth* v. *Schultheis*, 135 Ind. 701; *State Center* v. *Barenstein*, 66 Iowa, 249; *Commissioners* v. *Gas Co.* 12 Pa. St. 318; *Austin* v. *Murray*, 16 Pick. 126; *Landis* v. *Vineland*, 54 N. J. L. 75; *State* v. *Mahner*, 43 La. Ann. 496; *State* v. *Dulaney*, id. 500; *Tick Wo* v. *Hopins*, 118 U. S. 356; *Newton* v. *Belger*, 143 Mass. 598; 1 Dillon on Mun. Corp.—4th ed.—sec. 321; *Baltimore* v. *Radecke*, 49 Md. 217).

It is insisted by appellees, that the ordinance of May 23, 1896, is not void in the respect here indicated as to the whole of the ordinance, but only void as to the part of it, which makes the use of traffic teams upon an avenue or boulevard dependent upon the special permission of the board of trustees. In support of this contention the well known rule is invoked that, where certain provisions of an ordinance are void, the court will not declare void those provisions relating to the subject matter of the ordinance, which are distinct and separate from the void provisions. If an ordinance, or even the same section of an ordinance, contains two separate provisions, relating to different acts, with distinct penalties for each, one of which is valid and the other void, the ordinance may be enforced as to that part of it which is valid. When an ordinance consists of several distinct and independent parts, although one or more of them may be void, the rest are equally valid as if the void clauses had been omitted. But where an ordinance is entire, and each part has a general influence over the rest, and one part of it is void, the entire ordinance is void. The void part of the ordinance makes the whole ordinance void, if the void and valid parts are so connected as to be essential to each other. (1 Dillon on Mun. Corp.—4th ed.—sec. 141). We are inclined to think, that the objectionable clause is here so intimately connected with the other portions of the ordinance, as to permeate the whole and make the whole void. The ordinance does not positively and absolutely exclude all traffic teams, but it only excludes such traffic teams as the board of trustees may not specially permit to pass over the avenue. But if it were true, that the void portion of the ordinance can be separated from the valid portion so as to permit the latter to stand, it is nevertheless the fact that the portion of the ordinance, which confers upon the board of trustees the discretionary power already referred to, is the portion thereof which applies to the appellant in this case. The prosecutions were insti-

tuted against it or its employes, because it was driving traffic vehicles over the boulevard, and not because it was driving private wagons containing families. The arrests of appellant's employes were made because of a violation of that part of the ordinance, which confers the discretion upon the board, and which is, therefore, void.

Our conclusion upon this branch of the case is, that the ordinance of May 23, 1896, must be regarded as having been invalid, because of the discretionary power conferred upon the board of trustees.

*Third*—It is claimed by the appellees, that a court of equity had no jurisdiction in such a case as was made by the bill and amended bill of the appellant herein. The want of jurisdiction is sought to be established on two grounds. In the first place, it is said that the appellant did not allege in its bill any special damage to itself, different in degree and in kind from that suffered by the public at large. The general rule is that, when the duty about to be violated by the corporation or its officers is public in its nature, and affects all the inhabitants alike, one not suffering any special injury cannot in his own name, or by uniting with others, maintain a bill for injunction. A private individual cannot maintain a bill to enjoin a breach of public trust without showing that he will be specially injured thereby. Where no injury results to the individual, the public only can complain. Hence, in the declaration or bill the party complaining must allege and prove some special damage, different in kind and degree from that suffered by the general public. (*City of Chicago* v. *Union Building Ass. supra; Barrows* v. *City of Sycamore*, 150 Ill. 588; *Field* v. *Barling*, 149 id. 556; *Smith* v. *McDowell*, *supra*). If the rule thus announced is applied to the allegations of the bill in this case, it will be seen that facts are set up, which show a special injury to the appellant different in kind and degree from that suffered by the general public. The complaint made is not of the inconvenience suffered from being forbidden to travel upon the

boulevard with traffic wagons. Such inconvenience is suffered by all other persons using traffic wagons in common with the appellant. But the bill shows, that there were only two avenues in the town of Cicero running north and south, which could be used by the appellant for the purpose of delivering its lumber and building material to the persons to whom it was sold. These two avenues were Central avenue and Austin avenue. The bill alleges, that Central avenue was rendered impassable by the building of a sewer therein and a trench for the sewer, and the throwing up of dirt upon the sides of the trench. It also avers, that the appellant was forbidden to use Austin avenue by the town authorities under the ordinances in question. It was thus shut off from the use of any avenue, and thereby prevented from delivering the lumber and other material, sold by it, to the parties entitled to receive it. Its business was in this way injured and destroyed. The appellant, therefore, suffered a special injury different from that which was sustained by the general public.

In *Shero* v. *Cary*, 35 Minn. 423, which was an action for obstructing a highway, a complaint was held to be insufficient in the necessary averments of special damage, which alleged generally that the plaintiff was compelled to travel by longer and worse roads, and could only reach certain places by trespassing upon private lands, and was thereby prevented from marketing his produce. The decision in that case, however, was based upon the decision in the case of *Houck* v. *Wachter*, 34 Md. 265. Upon reference to the latter case, the declaration showed that, by reason of a certain obstruction in the highway, appellant was obliged to travel a longer and more circuitous route; and it was held that the declaration did not show such special damage as to entitle the appellant to maintain an action. It was, however, said in that case, that the declaration did not aver, that the highway, which was obstructed, was the only way to and from appellant's

farm, or that such highway was necessary to enable him to pass and re-pass from his farm to mill and market. The plain intimation of the court there is that, if the allegation had been that the highway obstructed was the only way to and from the farm, there would have been a sufficient allegation of special damage. But the mere fact, that appellant was obliged to proceed by a very circuitous route, was not a statement of any other inconvenience suffered by him than that which was common to the rest of the traveling community. It was also therein said that, when a plaintiff had been delayed for four hours by an unlawful obstruction in the highway, and was thereby prevented from performing his journey as many times in a day as if the obstruction had not existed, there was a sufficient special or particular injury to entitle him to maintain the suit, because it appeared that he was engaged in carrying coal upon the highway, and the damage he suffered was in the conduct of his business, and of a substantial nature, and was different in kind from that suffered by the public at large. So, in the case at bar, under the facts already stated, the appellant suffered damage of a substantial nature in the conduct of its business, which was different from that suffered by the general public.

In the second place, it is said that an injunction will not issue to prevent the enforcement of an invalid ordinance; and that no case was made by the bills, which justified the appellant in coming into a court of equity. It is true that, where an ordinance has been enacted by the proper authorities, a court of equity will not interfere by injunction to restrain its enforcement in the appropriate courts upon the ground that such ordinance is illegal, or upon the alleged innocence of the parties charged; nor will the court enjoin proceedings for the enforcement of such an ordinance for the purpose of determining the validity of the ordinance, when the defendant has an adequate remedy at law. But it is well settled, that there

are two exceptions to the rule, that courts of equity will not interfere to restrain trespasses, whether committed under the forms of law or otherwise. These exceptions are *first*, to prevent irreparable injury, and *second*, to prevent a multiplicity of suits. It may be that the bills of appellant could not be sustained for the purpose of preventing a multiplicity of suits, because the suits sought to be enjoined were not between different persons assailing the same right and thing, but were cases where the right was disputed between two persons only for themselves alone. However this may be, the bills were sufficient upon the other ground, that is to say, for the purpose of preventing irreparable injury. The appellant showed, that it had no means of transacting its business without the use of Austin avenue, and that, whenever one of its wagons went upon such avenue, the driver thereof was arrested under the ordinance, and a number of prosecutions were instituted against it. The bill alleges, that the officers of the town, instituting these prosecutions, were insolvent, so that no damages could be recovered against them in an action at law. In *Poyer* v. *Village of DesPlaines*, 123 Ill. 111, and *Chicago Stock Exchange* v. *McClaughry*, 148 id. 372, and *Comrs. of Highways* v. *Green*, 156 id. 504, there were no allegations in the bills, that the parties charged with the trespasses were insolvent. In this respect, those cases are different from the case at bar. In *Owen* v. *Crossett*, 105 Ill. 354, it was said (p. 357): "It is first urged in affirmance of the decree dismissing the bill, that it will not lie to enjoin a trespass. Such is undoubtedly the rule where it is a simple trespass to property, and is but a single act, and the person committing or threatening the trespass is able to respond in damages; but where he is insolvent, and repeated trespasses of a grave character are threatened to be repeated, equity will interfere to prevent the wrong by restraining the threatened trespass." This language expressly fits the facts in the case at bar.

Our conclusion is, that a court of equity had jurisdiction to entertain the bills filed by the appellant, both upon the ground that the bills showed a special damage to the appellant different in kind and degree from that suffered by the general public, and also upon the ground that appellant, according to the showing of the bills, had suffered irreparable injury.

Inasmuch as the appellant was properly in a court of equity, and inasmuch as the ordinance, under which its employes were prosecuted, was void by reason of the discretion vested in the board of trustees, a case was made by the original and amended bills, which entitled the appellant to relief even though its charge, that the act of 1889 was unconstitutional, was not sustained. The original, amended and supplemental bills, therefore, should have been dismissed by the circuit court at the costs of the appellees, and not at the cost of the appellant. Of course, after the ordinance of May 23, 1896, was repealed, and the new ordinance of July 27, 1896, was passed without the objectionable clause, and after all the prosecutions against appellant's employes were dismissed, there was no longer a necessity for continuing the litigation between the parties to these suits, except so far as it was necessary to dispose of the question of costs. The prayer of the supplemental bill, filed by the appellant, was for a dismissal of the suit at the costs of the defendants thereto, the present appellees. We are of the opinion, that the prayer of the supplemental bill, in this respect should have been granted; and that the court erred in requiring the appellant, instead of the appellees, to pay the costs of the proceeding.

For the error thus indicated, the decree of the circuit court is reversed, and the cause is remanded to that court with directions to dismiss the bills at the costs of the defendants below.    *Reversed and remanded.*