THE VILLAGE OF ARLINGTON HEIGHTS, Plaintiff-Appellee, *v.* GERALD SCHROEDER, Defendant-Appellant.

(Nos. 58612-13 cons.;

First District (1st Division)—April 21, 1975.

Dudley R. Sullivan, of Chicago (John J. O'Connor, of counsel), for appellant.

Wayne J. Silva, of Arlington Heights, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Gerald Schroeder, was found guilty after a bench trial of two separate violations of article III, ch. 19, § 301(e) of the Municipal Code of Arlington Heights, which makes it unlawful for any lot owner to permit an "improper growth of weeds or grasses." The ordinance defines "improper growth of weeds or grasses" as "all weeds or grasses over 12 inches in height from the ground." It also provides that "[l]ands under agricultural cultivation may be exempted from the ordinance upon written request to the Director of Health Services." The defendant contends that the ordinance is an unreasonable exercise of the police power and that the provision for exemption is invalid.

The defendant owns two tracts of land, tract 1 being approximately 10 acres within the Village of Arlington Heights and tract 2 being approximately 20 acres outside the Village of Arlington Heights but contiguous to the Village. The defendant has been a farmer all his life and has cultivated both tracts since 1950. He planted asparagus in tract 1 in 1967 and in tract 2 in 1969. He has invested over $12,000 in seeding both tracts.

Tract 1 is rectangular shaped and is bounded on the east and west primarily by single-family homes, on the north by Palatine Road and on

the south by tract 2. Across Palatine Road is a single-family development that extends from Windsor Avenue on the west to Birchwood Lane on the east. Tract 2 is also rectangular shaped, and is bounded on the west by vacant property zoned for multiple-family dwellings, on the east by John Hersey High School, on the north partly by tract 1 and partly by five single-family homes and on the south by Thomas Avenue. Directly across Thomas Avenue is a general business district.

On the date of the alleged offenses, there were crops of asparagus in both tracts. The defendant testified that weeds grow with asparagus and that spraying may taint the crop. Although William Mack, the Village Sanitarian, spoke to him about the weed growth, no one told him he could apply for an exemption. He complained to Mack about persons trampling the fields. A number of residents testified to a growth of weeds up to 3½ feet; that children played in the fields, used it for parties and set fires. There were motorcycles and cars going through the field. One resident found beer cans in the field next to her home. One woman testified her children and dog had allergies which the weeds aggravated and another testified her husband had hay fever. Two gave an opinion that the weeds were fire hazards.

■■ The defendant never urged the constitutional arguments in the trial court that he does here. Before oral argument, this court conducted a conference. Both sides were asked to submit authority on the question of whether the defendant had waived the right to raise the constitutional questions. At one point the attorney for the Village expressed a desire to have a ruling on the validity of the ordinance, but later said that he would comply with the court's request for authority. The Village, however, did not submit any authority but the defendant did. In view of the Village's position, then, we will pass on the question although the trial court never had an opportunity to do so. *In re Application of County Treasurer*, 25 Ill.App.3d 717, 718-719, 323 N.E.2d 803.

■■ The defendant argues that the provisions of the ordinance that lands under agricultural cultivation may be exempted upon written request is invalid for two reasons. First, he says that it is an unreasonable exercise of police power to require a farmer to obtain a permit to be exempted from the weed-abatement ordinance in order to cultivate his land and urges, since the legislature has not specifically conferred upon the municipality the right to require permits, that the right does not in fact exist. Under the Illinois Municipal Code, the corporate authorities of each municipality may do all acts and make all regulations which may be necessary or expedient for the promotion of health, may provide for the destruction of weeds at the expense of the owners and may provide for the cutting of weeds in the municipality. If the owners of the real

estate refuse or neglect to cut the weeds the Village may collect from the owners or place a lien on the property. (Ill. Rev. Stat. 1973, ch. 24, pars. 11—20—5, 6, 7.) We believe that the legislative grant is sufficiently broad in scope to empower the municipality to restrict and regulate the growing of weeds regardless of the location, subject, of course, to constitutional limitations.

■■ Second, the defendant argues that, since the ordinance does not contain standards or conditions governing the issuance of the exemption permit, it invests arbitrary discretion in the public official. The Village, however, counters that the Director has no discretion but, rather, that "the ordinance requires its officials to *ministerially* grant an exemption for the growth of crops or 'agricultural cultivation' which may fall within the classification of weeds and grass. An obvious example would be a hayfield. The exemption requirement does not classify asparagus as a weed or a grass." (Emphasis added.) That interpretation reads things into the ordinance that are not there. First, the ordinance does not say that weeds or grasses may be exempted, but *lands*. And implicit in the Village's interpretation is the authority of the Director to decide what constitutes a weed. The ordinance has not granted him that authority. (Compare the Noxious Weed Law, which defines noxious weed to mean "any plant which is determined by the Director [of the Department of Agriculture], the Dean of the College of Agriculture of the University of Illinois and the Director of the Agricultural Experiment Station at the University of Illinois to be injurious to public health, crops, livestock, land or other property." (Ill. Rev. Stat. 1973, ch. 18, par. 102(5)) Assuming, however, the Director's authority, the Village's interpretation is self-contradictory. A ministerial act is one which is mandatory, admitting of no personal discretion or judgment in its performance. But before the Director may perform his "ministerial" function he must first decide whether or not a particular growth is a "weed" within the meaning of the ordinance. The ordinance contains no definition of "weed," which is defined in the Economic Poison Law as "any plant which grows where not wanted." (Ill. Rev. Stat. 1973, ch. 5, par. 87c.2.) A dictionary definition, in part, is as follows: "A plant considered undesirable, unattractive or troublesome; especially, one growing where it is not wanted in cultivated ground." (American Heritage Dictionary of the English Language, 1969, American Heritage Publishing Co., Inc. and Houghton Mifflin Co.) Under either of those definitions, asparagus growing in a rose garden or a cornfield could be considered a weed by the Director. If for no other reason, since the Director would have to exercise discretion in determining whether a plant was a weed, his function cannot be considered ministerial.

██ We agree with the defendant's interpretation that the ordinance invests the Director with discretion in granting an exemption. In the exercise of that discretion he should perforce weigh a number of factors: *e.g.*, the area to be cultivated, the type of crop, the difficulty of weed removal, the economic hardship to the owner, and the detriment to the public. To illustrate, it would be unreasonable to require a farmer cultivating several acres of corn to remove every weed and growth of grass that might exceed a foot in height from the entire area under cultivation. On the other hand, it would be just as unreasonable to exempt a homeowner whose backyard consisted almost entirely of improper weeds or grasses because he also grew a few tomato plants. Under the ordinance the Director would be perfectly within his authority to deny the exemption in the case of the farmer cultivating corn and allowing it in the case of the homeowner growing a few tomato plants. The fault of the ordinance lies not in the grant of discretion to the Director but in its failure to impose any standards by which he is to be guided. That failure renders the ordinance an unlawful delegation of legislative authority. (*Figures v. Swank,* 128 Ill.App.2d 211, 217-218, 263 N.E.2d 599.) Any ordinance which invests arbitrary power in a public official which may be used in the interest of some to the exclusion of others is unreasonable and void. In *Dean Milk Co. v. City of Aurora,* 404 Ill. 331, 336, 88 N.E.2d 827, an ordinance requiring a license for the sale and distribution of milk provided that the license should not be issued without the approval of the health officer and mayor. The court in striking down the ordinance observed:

> "It does not specify the circumstances under which approval must be given, but purports to vest in the designated officers wide discretion to give or withhold their approval. It is beyond the power of a municipality to delegate to an administrative officer its inherent function of determining what the law shall be and to whom it shall be applied. *City of Rockford v. Hey,* 366 Ill. 526."

In *City of Chicago v. Matthies,* 320 Ill. 352, 355-356, 151 N.E. 248, the ordinance required the permission of the Commissioner of Buildings to convert an apartment building to a rooming house. The ordinance defined an "apartment" but did not define a "rooming house." The court said:

> "The city council, under the powers granted to it by the legislature, has authority to define a rooming house, and before that body imposes restrictions upon the use of a rooming house it is necessary either that the term be so generally understood as to need no definition or the ordinance must define it, otherwise the ordinance is incomplete. An ordinance which leaves to an executive officer

the definition of the thing to which such ordinance applies, such definition not being commonly known, is an unwarranted and void delegation of legislative power to an executive officer. [Citations.]"

Since we have determined that the exemption clause is invalid, the issue then becomes whether the entire ordinance is void. It is the general rule that where the portions of an ordinance are so connected with one another that the court cannot say that the legislative body would have passed the remaining part without the invalid part, the entire act is void, otherwise it is not. (*Clark Oil & Refining Corp. v. Village of Tinley Park*, 110 Ill.App.2d 61, 64-65, 249 N.E.2d 140.) Put another way, the entire ordinance is void if the effect of partial validity was not intended. In *Cicero Lumber Co. v. Town of Cicero*, 176 Ill. 9, 28, 51 N.E. 758, an ordinance prohibited all vehicular traffic from certain streets except private wagons conveying families and vehicles receiving special permission of the Board of Trustees. The supreme court held the provision requiring permission of the Board to be unreasonable since it invested the Board with arbitrary discretion to grant or deny permission as it saw fit. The town argued that the whole ordinance should not be held void. The effect of adopting the town's argument would have been that all vehicular traffic except family vehicles would have been prohibited. The supreme court said in striking down the entire ordinance:

"The void part of the ordinance makes the whole ordinance void, if the void and valid parts are so connected as to be essential to each other. [Citation.] We are inclined to think, that the objectionable clause is here so intimately connected with the other portions of the ordinance, as to permeate the whole and make the whole void." 176 Ill. 9, 28.

■■ The effect of upholding the validity of the remainder of the ordinance in this case would mean that every person engaged in raising crops, however extensively, would be subject to a penalty for failure to remove any weed or grass in excess of 1 foot in height, regardless of the mechanical and economical difficulties the removal might entail. We cannot believe that such was the legislative intent. We judge, therefore, that the ordinance would not have been enacted without the invalid exemption clause, that the void and valid parts are so connected as to be essential to each other and that the entire ordinance is void. Since the defendant's convictions were based on an unconstitutional ordinance, the judgments of the circuit court are reversed. In view of our holding, it is unnecessary to pass on the defendant's contention that the ordinance is unreasonable and arbitrary as it applies to him.

Judgments reversed.

BURKE, P. J., and GOLDBERG, J., concur.