EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS BENÍTEZ CASTAÑO, acusado y apelante.

Núm. 7457.—*Sometido:* Marzo 14, 1939. *Resuelto:* Julio 13, 1939.

*Jorge Benítez Gautier* y *G. Benítez Gautier,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Gabriel Hernández, policía insular, denunció a Jesús Benítez Castaño por una infracción de la Ley de Automóviles, cometida como sigue:

"Que en 13 de abril 10:15 A. M. de 1938 y en la calle Loíza, esquina San Jorge de Santurce, del Distrito Judicial Municipal de San Juan, P. R., que forma parte del Distrito Judicial de San Juan, P. R., el referido acusado Jesús Benítez Castaño, allí y entonces, ilegal, voluntaria y maliciosamente violó lo dispuesto en el Artículo 5, letra (J) de la Ley de Automóviles vigente, aprobada el día 13 de abril de 1916, tal y como fué enmendada, para reglamentar el uso de vehículos de motor por los caminos públicos de Puerto Rico, porque en ocasión en que guiaba el automóvil núm. 10674, de su propiedad por el referido sitio, que es un camino público, no llevaba consigo su placa o licencia que lo autorizara a manejar vehículos de motor por los caminos públicos de Puerto Rico, al serle solicitada por el denunciante.''

De la sentencia condenatoria dictada en su contra por la corte municipal, apeló Benítez para ante la corte del distrito. Celebrado el juicio de nuevo, la corte de distrito lo declaró culpable de la infracción imputádale y lo condenó a pagar una multa de un dólar y en defecto de pago a sufrir un día de cárcel, con más las costas.

Apeló Benítez para ante este tribunal y en su alegato señala dos errores, a saber: que la denuncia no aduce hechos constitutivos de delito público y que el inciso (j) del artículo 5 de la Ley de Automóviles es nulo porque infringe la Constitución de los Estados Unidos de América.

■ Argumentando el primer error cita el apelante el artículo 2, inciso (a), de la Ley de Automóviles, que dispone:

"Artículo 2.—(a) Será ilegal el manejar cualquier vehículo de motor en un camino público de Puerto Rico sin tener licencia para ello, expedida por el Comisionado del Interior. Para obtener dicha licencia, el dueño del vehículo de motor presentará una solicitud al efecto, en el modelo prescrito y suministrado por el Comisionado del Interior, la cual contendrá su nombre y dirección, una breve descripción del vehículo para el cual se solicita la licencia, incluyendo el número de fábrica, estilo, número de caballos de fuerza, si es para uso particular o público, y los demás informes que el Comisionado del Interior requiera con el fin de llevar a cabo las disposiciones de esta Ley.''

Luego el artículo 5, inciso (a), de la misma que ordena:

"Artículo 5.—(a) Ninguna persona podrá manejar un vehículo de motor en Puerto Rico sin que se le haya expedido licencia al efecto por el Comisionado del Interior. Dichas licencias serán expedidas a virtud de solicitud extendida al efecto en el modelo prescrito por el Comisionado del Interior, y suministrarán los informes, referentes al solicitante, que el Comisionado estimare necesarios a los fines de esta Ley."

Y por último el inciso j, de la propia sección 5, y la sección 6 de la ley que prescriben:

"Artículo 5.—(j) Cada licencia tendrá un número correlativo y se suministrará además a la persona a quien ésta se le expidiere una chapa de metal con igual número; *Disponiéndose,* que la persona que estuviere manejando un vehículo de motor deberá llevar consigo la chapa o licencia y mostrarla a cualquier oficial de la policía, caminero uniformado, o agente de autoridad cuyos deberes se relacionen con el tráfico, siempre que éste lo solicitare." Leyes de 1925, pág. 759 (Ley núm. 93).

"Artículo 6.—Las personas no residentes en Puerto Rico, que tengan licencia para manejar automóviles de cualquier Estado o Territorio de los Estados Unidos, quedan exentos del requisito de licencia del artículo precedente, pero deberán obtener del Comisionado del Interior, una certificación al efecto, que llevarán consigo, cuando estén manejando automóviles. Esta certificación podrá ser suspendida o revocada de la manera prescrita para la suspensión o revocación de licencias para manejar un vehículo de motor en el artículo anterior; y no podrán expedirse por un período de tiempo mayor de cuatro meses, en cualquier año económico." Leyes de 1925, pág. 761 (Ley núm. 93).

Entonces expresa:

"Comparando lo dispuesto por el inciso (j) del artículo 5 con el artículo 6, aparece claramente que ambas disposiciones tienen por objeto regular el mismo acto, o sea, el de que el conductor de un vehículo lleve consigo su placa o licencia en el momento de manejarlo. Es claro asimismo que si un residente de Puerto Rico cometiera un delito al no llevar consigo su placa o licencia, igualmente lo cometería una persona no residente al no llevar consigo la certificación de que habla la ley, ya que es un principio de ley general en nuestro país, que no puede existir discrimen en sus leyes en favor

ni en contra de ninguna clase de ciudadanos. Siendo esto así, para que se pueda castigar al apelante en este caso, sería necesario que esta Hon. Corte decidiera que la frase: 'que llevarán consigo cuando esté manejando automóviles' contiene en sí todos los elementos necesarios para la creación y definición de un delito público estatutario.''

A nuestro juicio en ambos casos, en el de la persona residente y en el de la no residente, se infringe la ley si dichas personas no llevan consigo la licencia en el primer caso y la certificación en el segundo. Más específica la ley en el primero, es lo suficientemente clara en el segundo para que ningún ciudadano pueda llamarse a engaño. No nos parece en verdad que el argumento guarde mucha relación con el error señalado.

La otra razón que se aduce para sostener dicho error es la de que la Legislatura no fijó castigo para la infracción imputada.

La Ley núm. 75 de 1916, pág. 144, para reglamentar el uso de vehículos de motor en Puerto Rico y para otros fines, tal como quedó enmendada por la núm. 55 de 1921, pág. 423, por la núm. 93 de 1925, pág. 757 y por la núm. 9 de julio 15, 1926, pág. 23, regula por completo la materia. Su sección 18 es como sigue:

''Artículo 18.—Toda persona, firma, sociedad o corporación que por sí misma o por medio de sus agentes, transportare en los vehículos pesados de motor, o en los vehículos comerciales más carga que la autorizada por esta Ley, será multada con cincuenta (50) dólares por la primera infracción; cien (100) dólares por la segunda, y por la tercera infracción le será revocada la licencia del vehículo. A los *chauffeurs* que condujeren por caminos públicos un vehículo pesado de motor o un automóvil comercial con más carga que la autorizada en esta Ley, o a mayor velocidad que la en esta Ley establecida, o desprovisto del aparato para limitar la velocidad, que se dispone en el apartado (*o*) del artículo 13 de esta Ley, le será suspendida la licencia por el término de un mes por la primera infracción; seis meses por la segunda, y por la tercera infracción le será revocada la licencia definitivamente. Las infracciones a las otras disposiciones de esta Ley, serán consideradas como delitos menos grave.''

Nos parece clara, terminante. El hecho de que al enmendarse en 1926 se comenzara por establecer las penalidades en relación con los vehículos pesados de motor, esto es, los destinados a carga, no quita fijeza o claridad a la otra disposición relativa a la penalidad de las demás infracciones, entre las cuales se encuentra la imputada al apelante. No existe, pues, el primero de los errores señalados.

█ Tampoco el segundo que se discute con gran empeño en el alegato. La médula del argumento está contenida en el siguiente párrafo del mismo:

"De acuerdo con dicha disposición, inciso (j) del artículo 5 de la Ley núm. 75 de 1916, cualquier policía insular de Puerto Rico, puede en cualquier momento que a su voluntad le plazca, detener a a una persona que esté manejando un vehículo de motor por las carreteras insulares, sin tener en cuenta las circunstancias y sin más reglas para guiar su conducta que su capricho para exigirle a dicha persona que le muestre su placa o licencia. Al aprobar esta parte de la ley, el legislador dejó al arbitrio de la policía el perjudicar o favorecer a los ciudadanos, dependiendo del humor, o del grado de simpatía o antipatía que el oficial de tráfico pueda sentir por determinada persona; violándose así los más sagrados principios constitucionales, tales como el derecho a la libertad, y el derecho al pleno goce de la vida, enunciados tanto en nuestra Carta Orgánica como en la Constitución de los Estados Unidos."

Cita la sección 329, pág. 1135, de 11 American Jurisprudence, que dice:

"La libertad personal consiste en gran parte del derecho a locomoción—ir a donde y cuando uno quiera—restringido tan sólo en tanto lo requieran los derechos ajenos para beneficio de la comunidad en general. El derecho de un ciudadano a viajar por las carreteras públicas, y a transportar su propiedad, en coche de caballos, en carromato o automóvil, no es un mero privilegio que pueda permitirse o prohibirse a plena voluntad, sino un derecho que tiene bajo el derecho a la vida, a la libertad, y a la consecución de la felicidad. Por tanto, bajo esta garantía constitucional uno puede, en condiciones normales, viajar libremente por las carreteras o sitios públicos, mientras se conduzca de manera ordenada y decorosa, sin interferir ni violar los derechos ajenos, y será protegida, no sólo su persona, sino también la seguridad de su viaje."

Y luego invoca varias decisiones de los tribunales entre las cuales se destaca la del caso de *City of St. Louis* v. *Allen* de la Corte Suprema de Missouri, reportada en 204 S. W. 1083, por virtud de la cual se anuló por inconstitucional cierta ordenanza de la ciudad de St. Louis, Missouri, que contenía las siguientes disposiciones:

"Sec. 1351.— . . . — Los chóferes deben siempre cumplir cualquier orden dada verbalmente o con la mano por cualquier miembro de la fuerza policíaca, en cuanto a parar, arrancar, acercarse a o alejarse de cualquier sitio; la manera de tomar o dejar pasajeros o cargar o descargar mercancías en cualquier punto."

"Sec. 1357.— . . . — Cualquier persona que violase alguna de las anteriores disposiciones, reglas y reglamentos se la considerará culpable de un delito menos grave, y una vez convicta del mismo, se castigará con una multa que no excederá de cien dólares."

Como la opinión contiene un estudio de la cuestión envuelta y de la jurisprudencia y arroja luz sobre el alcance del principio constitucional invocado, nos parece propio transcribirla en su mayor parte. Dice:

"Sin importar cuán meritorios puedan ser los derechos de la ciudad si fuesen debidamente expuestos, la ordenanza en que basa su denuncia es nula.

"En el caso de *Mayor, etc., of Baltimore* v. *Radecke*, 49 Md. 217, 33 Am. Rep. 239, la ordenanza municipal disponía que ninguna persona debía instalar una máquina de vapor sin haber previamente obtenido para ello permiso del alcalde y del consejo, y que cualquier máquina que así fuese instalada debería removerse dentro de los seis meses siguientes a la revocación del permiso y notificación del alcalde. Se resolvió en ese caso que la ciudad podía prescribir por medio de una ordenanza reglas para el uso de máquinas de vapor, pero que no podía dejar al libre criterio de un solo funcionario el poder arbitrario de favorecer a un individuo e imponerle su voluntad a otro. Se dijo allí:

" 'De hecho, una ordenanza que revista a un individuo con tal poder, difícilmente cae dentro del dominio de la ley, y nos vemos obligados a declararla sin fuerza y nula.'

"Ese caso se cita con aprobación en 1 Dillon on Mun. Cor. (4ta. ed.) sec. 321.

"En el caso de *Richmond* v. *Dudley*, 129 Ind. 112, 28 N. E. 312, 13 L.R.A. 587, 28 Am. St. Rep. 180, se resolvió que las ordenanzas municipales deben establecer reglas y condiciones a observarse en los negocios, y deben conceder a todos los ciudadanos los mismos privilegios bajo tales reglas, pero que no debe dársele poder a un funcionario para discriminar entre individuos. Se cita el caso con aprobación en *City of Elkhart* v. *Murray*, 165 Ind. 304, 75 N. E. 593, 1 L.R.A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 748. Esa regla se confirma en *Cicero Lumber Co.* v. *Town of Cicero*, 176 Ill. 9, 51 N. E. 758, 42 L.R.A. 696, 68 Am. St. Rep. 155, y la larga lista de casos que allí se citan.

"En *Hays* v. *Poplar Bluff*, 263 Mo. 516, 173 S. W. 676, L.R.A. 1915D, 595, se decidió por un tribunal colegiado que, aún cuando una ciudad puede prescribir 'límites de fuego' (*fire limits*) sin embargo, no tiene facultad para ordenar que no se construya edificio alguno con los materiales prescritos sin previamente haber obtenido la autorización del alcalde y el consejo, y que no se concederá tal autorización, sin el consentimiento escrito de todas las personas dueñas de alguna propiedad en la manzana. Se dijo que en tales casos la ordenanza debe dictar reglas que apliquen a todos por igual, y que ello no debe dejarse al arbitrario criterio de persona alguna. Ese caso cita con aprobación los casos de Indiana arriba mencionados.

"La odenanza de que aquí se trata pone al ciudadano bajo el poder arbitrario del funcionario, sin importar las circunstancias del caso. Su nulidad es tan patente que el demandado no cita autoridad alguna para sostenerla. En *Bessonies* v. *City of Indianapolis*, 71 Ind. 189, y en *City of Elkhart* v. *Murray*, 165 Ind. 304, 75 N. E. 593, 1 L.R.A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 748, *supra*, se resolvió que tales ordenanzas violan la constitución en cuanto ésta garantiza la igual protección de las leyes. Se dijo allí que lo que la Legislatura no podía hacer era autorizar a una corporación municipal para que hiciese lo que ella (la legislatura) no podía hacer.

"En nuestra opinión, la ordenanza de que se trata está sujeta a la objeción de que tiende a privar a las personas de la igual protección de las leyes, y que, aún cuando la ciudad tuviese el caso más meritorio, no puede basarlo en esa ordenanza nula."

A nuestro juicio la ley aquí aplicada no infringe precepto constitucional alguno. Está dentro del poder de la Legislatura y ha sido impuesta por las necesidades de los tiempos. Al actuar a virtud de ella, la policía puede cometer arbitra-

riedades como puede cometerlas al perseguir cualquiera de los delitos previstos y castigados en el Código Penal, pero no lleva en sí la esencia del discrimen. Se dictó con ánimo de que se aplicara a todos por igual y para beneficio último de todos. No deja nada al acaso. Contiene una regla clara, precisa.

En la propia obra citada por el apelante, American Jurisprudence, se encuentra a la página 526 del tomo 5, lo que sigue:

"El privilegio de usar las carreteras públicas no es un derecho absoluto y sin restricciones, sino que está sujeto a reglamentación por el estado a través de su poder policíaco como autoridad soberana. Este poder para regular se ha extendido para hacer frente al nuevo estado de cosas. Con la introducción y el desarrollo de los automóviles como medio de transportación, ha aumentado y se ha conferido amplia autoridad para reglamentar su uso. Por lo tanto, la legislatura de cada Estado tiene poder para exigir que todos los automóviles que transiten dentro de sus límites territoriales obtengan una licencia, y para dictar reglamentos detallados y razonables en cuanto a su uso en las carreteras públicas. La velocidad a que puede transitarse en las carreteras, y las carreteras y localidades en que pueden operarse, caen dentro del poder legislativo. El estado puede disponer por estatuto que la falta de cumplimiento con cualquiera de las disposiciones legislativas constituirá delito menos grave, o que serán responsables en daños y perjuicios las personas que operen un automóvil violando cualquier disposición estatutaria. Se ha resuelto que la enmienda constitutional que protege a las personas de que se las obligue a dar testimonio en su contra no es aplicable a la legislación que regula el uso de vehículos de motor, y que requiere, so pena, que se exhiban las tablillas; ni violan tales leyes la prohibición constitucional contra allanamientos y secuestros.

"Tales reglas pueden ser aplicables a carreteras y calles que no sean caminos públicos si se usan para el tránsito del público."

Estamos conformes en que el cumplimiento de la ley de que se trata requiere un gran tacto por parte de la Policía y también lo estamos en que lo fundamental es que se tenga la licencia. Pero el Legislador creyó que para la mayor

seguridad e igualdad para todos la licencia debería llevarse consigo por el que la tuviere cuando manejara el automóvil y la regla debe cumplirse, dejándose al juzgador que aprecie las circunstancias que puedan concurrir al imponer la pena. Si se trata de un verdadero olvido, ésta puede ser la mínima. Aquí la corte sólo impuso al apelante la multa de un dólar seguramente porque creyó que no tuvo la intención deliberada de infringir la ley, intención que no es absolutamente necesaria en faltas de esta clase para que la infracción se entienda cometida.

Parece oportuno terminar repitiendo lo que esta corte dijo y resolvió por medio de su Juez Asociado Sr. Hutchison hace diez y siete años interpretando el mismo precepto de ley—inciso (*j*) del artículo 5 de la ley para reglamentar el uso de los vehículos de motor, de 1916—aquí envuelto, en el caso de *El Pueblo* v. *Velázquez,* 30 D.P.R. 359, 360, a saber:

"En el momento del arresto acababa de llegar a un hotel el apelante y estaba sentado en su automóvil. En la oficina del hotel tenía su maleta donde se encontraba la placa. Había dejado de manejar el automóvil y no se alega, ni se probó en el juicio, que se hubiera sacado algún equipaje de dicho automóvil antes de llegar al térm'no del v'aje, o que la maleta que contenía la placa no estuvo todo el t'empo en el vehículo durante tal viaje.

"La mayor parte de la prueba se refiere a los pormenores de cierto incidente que culminó en el arresto del apelante. Este preludio, sin embargo, nada tiene que ver con la verdadera cuestión envuelta y no es necesario que se discuta.

"La ley no d'ce que la chapa de metal deberá portarse por el dueño s'empre que esté sentado en su carro, sin tenerse en cuenta las circunstancias, s'no siempre que estuviere manejando el vehículo. Ni expresa tampoco que deberá mostrarse la placa en todos los casos en que la pida la policía, sino solamente cuando el oficial de policía 'solicita verla mientras el tenedor de la licencia estuviere manejando un vehículo de motor.'

"Con un poco más de cortesía y consideración por parte de la policía, y también de tacto y prudencia por los *chauffeurs,* al proceder en una cuestión algo delicada, como ésta, a veces se evitarían molestias a las cortes y al Gobierno el gasto de tener que resolver

casos en los que el único delito cometido es una mutua falta de etiqueta con circunstancias atenuantes.''

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Wolf disintió.*

El Juez Asociado Sr. Travieso no intervino.