CITY OF ST. LOUIS v. HUGH ALLEN, Appellant.

Division Two, July 16, 1918.

1. **ORDINANCE: Arbitrary Will of Officer.** Neither the Legislature nor the city can commit to the unrestrained will of a single officer the power arbitrarily to favor one individual in the use of streets and to deny such favor to others.

2. ——: ——: **Drivers: Obedience to Direction of Police.** An ordinance declaring that "drivers must at all times comply with

any direction by voice or hand of any member of the police force, as to stopping, starting, approaching or departing from any place" puts the citizen in the arbitrary power of the police officer regardless of the circumstances of the case, is subject to the objection that it deprives persons of equal protection of the laws, and is invalid; and however meritorious may be the city's case against an offender, he cannot be convicted of its violation.

3. ――――: ――――: Entrance to Building. A large eight-story office building fronting on a busy street must have an entrance from the street, as well as from the sidewalk; and a proper place marked off between posts and placarded with a sign warning all persons not to stand their vehicles between the posts, is a reasonable regulation; but an ordinance making the use of such placarded entrance dependent upon the direction of a policeman, is invalid.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Benjamin F. Clark,* Judge.

REVERSED.

*Leahy, Sanders & Barth* for appellant.

(1) An automobile has, subject to valid statutory regulations, the same rights on the streets of a city as any other vehicle. 2 Elliott on Roads and Streets (3 Ed.), sec. 1107, p. 647; 2 Dillon on Municipal Corporations (5 Ed.), sec. 714, p. 1086; State v. Swagerty, 203 Mo. 522; Hall v. Compton, 130 Mo. App. 679; Daily v. Maxwell, 152 Mo. App. 423. (2) The easement acquired by the public in the streets of a city is intended, *inter alia,* for purposes of travel and transportation and as a means of communication with all the incidental rights which accompany these purposes. 3 Dillon on Municipal Corporations (5 Ed.), sec. 1211, p. 1907. (3) Travelers, whether on foot or in vehicles, have a right to stop along the ways, roads or streets, for a reasonable time, for their own convenience in the ordinary course of business or social life; and they do not thereby lose their rights as travelers to the protection of constitutional guaranties to person and property. 2 Elliott

on Roads and Streets (3 Ed.), sec. 1,100, p. 640; Smet-hurst v. Independent Church, 148 Mass. 266; Odom v. Schmidt, 52 La. Ann. 2131; Lacy v. Winn, 3 Pa. Dist. 811; Mark v. Fritschy, 195 N. Y. 283.    (4) The ordinance (Sections 1351 and 1357) provides that drivers of vehicles in said city must at all times comply with any direction of any member of the police force, as to stop-ping or starting a vehicle, or approaching or departing from any place; or as to the manner of receiving or discharging passengers or freight in any place; makes a violation a misdemeanor punishable by a fine of not over one hundred dollars.    It therefore attempts to confer upon the police officer the power to make traffic rules and regulations, and is void because a delegation of legislative power.    Seibel-Suessdorf Co. v. Manu-facturers Ry. Co., 230 Mo. 82; City of St. Louis v. Howard, 119 Mo. 47; State v. Thompson, 160 Mo. 343. (5) As an agency of the State the city of St. Louis has the power to reasonably regulate the use of its streets by vehicles and pedestrians, by proper legislative action, but the city neither has, nor could the Legislature confer upon it, the right to delegate to its police officers the unlimited and unregulated power to improvise, make or declare, rules and regulations governing the use of its streets by owners or drivers of vehicles, or pedes-trians, because such delegation of power violates the fundamental principle that reasonable regulation is governed by or subject to rules or restrictions duly promulgated and certain in character, and is, in effect, a grant of despotic power. 2 Dillon on Municipal Corpo-rations (5 Ed.), sec. 665, 1002; City of St. Louis v. Heitzeberg Packing & Provision Co., 141 Mo. 388; Elk-hart v. Murray, 165 Ind. 307; Hays v. Poplar Bluff, 263 Mo. 516; Commonwealth v. Roy, 140 Mass. 433; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 27.    (6) These ordinance provisions, Sections 1351 and 1357, are in conflict with Sections 4 and 30 of Article 2 of the Constitution of Missouri and the Fourteenth Amend-ment of the Constitution of the United States, because the liberty and property of the citizen    are thereby

subjected to deprivation and loss in an arbitrary manner, without notice, by arrest and fine, and are not due process, and deny the equal protection of the laws.   Freund on Police Power (1 Ed.), sec. 611,.633; Clark v. Mitchell, 64 Mo. 579; State v. Loomis, 115 Mo. 313.

*Charles H. Dawes* and *H. A. Hamilton,* for respondent.

(1) The city of St. Louis has authority to regulate the traffic upon its streets.   (2) Section 1351, Revised Code of St. Louis 1912, requires drivers of vehicles to obey the direction of police officers in the use of the city streets.   This is not a delegation of legislative authority, and traffic in congested sections cannot be regulated except by the contant oversight and supervision of the traffic officer.

ROY, C.—Appellant was tried and fined in the police court of St. Louis. He appealed to the Court of Criminal Correction and met the same fate. He has appealed to this court, a constitutional question being involved.

The complaint, omitting formal parts, is as follows:

"Hugh Allen to the City of St. Louis, Dr.

"To one hundred dollars for the violation of an ordinance of said city, entitled, 'An Ordinance in Revision of the General Ordinances of the City of St. Louis,' being ordinance No. 26653, sections 1351, 1357, 1358, approved November 9, 1912.

"In this, to wit:   In the city of St. Louis and State of Missouri, on the 9th day of July, 1916, the said Hugh Allen did then and there drive a vehicle over and upon the streets of said city and did fail to comply with the direction by voice or hand of a member of the police force as to stopping, starting, approaching or departing from any place, to-wit, in front of Metropolitan Building, Grand Avenue and Olive Street, contrary to the ordinance in such cases made and provided,"

Section 1358 of the ordinance has no application to the case. The other two sections mentioned in that complaint are as follows:

"Sec. 1351. Drivers must at all times comply with any direction by voice or hand, of any member of the police force, as to stopping, starting, approaching or departing from any place; the manner of taking up or setting down passengers or loading or unloading goods in any place.

"Sec. 1357. Any person violating any of the foregoing provisions, rules and regulations shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not to exceed one hundred dollars."

In the Court of Criminal Correction and previous to the trial there, the defendant moved to quash the complaint on the ground that it did not state facts sufficient to constitute an offense under the ordinances of the city and because said Section 1351 of the ordinance is contrary to the Fourteenth Amendment to the Constitution of the United States, in that it deprives the defendant of his liberty and property without due process of law, and deprives him of the equal protection of the law. The motion was overruled.

The affair out of which this prosecution arose occurred on Grand Avenue in front of the Metropolitan Building, which fronts west on that avenue about 150 feet, and south on Olive Street about the same distance. It is an eight-story office building, almost entirely occupied by professional men. About the middle of the west front at the curb are two posts twenty-three feet apart, on each of which is the sign, "Don't stand between these posts." The defendant was the chauffeur of Mr. Leahy, one of his counsel in this case. On July 9, 1915, near four o'clock in the afternoon, the defendant drove his car to said entrance. The wife of his employer was in the car on her way to the office of her dentist in that building. The defendant backed his car so that the rear thereof was near the south post, and most of the car was in front of the entrance at an angle of about forty-five degrees. Backed

against the north post was an express wagon extending directly into the street, and to some extent in front of the entrance, engaged in receiving and delivering packages. Cars were parked closely on both sides of the street at that point for a distance not definitely shown here. Nat-B. Clark, the traffic officer at that point, testified that, after defendant had occupied that position fifteen or twenty minutes, the elevator starter in the Metropolitan Building asked him to make defendant move his car from the entrance.   The officer testified:

"I went out and said: 'You will have to move your machine from the building here, you can't block this entrance.'  He said: 'Where will I go?'  I said: 'I don't know where you will go, but you will have to move,' and he said: 'Where will I park this car?' I said. 'You may have to go up to Washington or down on Lindell, but you can't stop here.' He said: 'Huh, the madam was in the building and I will stay here until she comes down,' and I immediately placed him under arrest."

The elevator boy testified that after defendant had been there fifteen or twenty minutes, he (witness) asked defendant to move, and that defendant said there was no other place to go, and that witness asked the officer to compel defendant to move.

The defendant on the stand said that after he had been there about fifteen or twenty minutes, the elevator boy asked him to move, and that he (witness) told the boy to make the express wagons move then he would move, and that he told the officer the same thing. The arrest followed.

A building such as the Metropolitan must have an entrance from the street as well as from the sidewalk. It must have a mouth as all live creatures must have. That mouth must, as far as practically possible, be kept open and unobstructed. In this case twenty-three feet along the curb at the entrance was marked off between posts,

Special Privilege.

and the placards on those posts warned all persons not to stand there. That space was an entrance, but not a place for parking vehicles.

The express wagon was using a small part of it, not as standing ground, but for its entrance purposes. So far as appears, every one but the defendant respected the rights of other people in respect to that entrance. The defendant appeared on the scene and claimed a right which no one else claimed or received, the right to stop at that entrance in spite of the remonstrance of its spokesman, the elevator boy, and in spite of the police. It is as if he should say: "It is so nice for the owners of this building, the city authorities and all other persons to leave and keep this entrance open, leaving me as the only one entitled to close it and hold it *ad libitum*. I claim the special privilege under the Constitution which guarantees to me the *equal protection* of the laws! I even claim the right to tell the police to move other people and then come to me."

However meritorious the city's rights may be if properly presented, the ordinance relied on by the city in its complaint is invalid.

In Mayor of Baltimore v. Radecke, 49 Md. 217, the city ordinance provided that no one should erect a steam engine without the previous sanction of the mayor and council, and that any such engine so erected **Invalid Ordinance.** should be removed within six months after such permit should be revoked and notice given by the mayor. It was there held that the city by ordinance could prescribe regulations for the use of steam engines, but that it could not commit to the unrestrained will of a single officer the power arbitrarily to favor one individual in that respect and to impose his will on another. It was there said: "In fact, an ordinance which clothes a single individual with such power, hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void."

That case is cited with approval in 1 Dillon on Mu. Cor. (5 Ed.), sec. 321.

In Richmond v. Dudley, 129 Ind. 112, it was held that city ordinances must specify rules and conditions to be observed in the conduct of business, and must allow all

citizens the same privileges under those rules, and must not empower an officer to arbitrarily discriminate between individuals in that respect. That case is cited with approval in City of Elkhart v. Murray, 165 Ind. 304. That rule is affirmed in Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, and the long list of cases there cited.

In Hays v. Poplar Bluff, 263 Mo. 516, it was held by Court in Banc that though a city can prescribe "fire limits," yet it has no power to ordain that no building shall be constructed of the proscribed materials without the permission of the mayor and council, and that such permission shall not be given without the written consent of all persons holding property in the block. It was there said that in such matters the ordinance must make rules applicable to all alike, and that such matters cannot be left to the arbitrary will of any one. That case cites with approval the Indiana cases above mentioned.

The ordinance here involved puts the citizen in the arbitrary power of the officer regardless of the circumstances of the case. Its invalidity is so glaring that the respondent has not cited any authority to uphold it. In Bessonies v. City of Indianapolis, 71 Ind. 189, and in City of Elkhart v. Murray, 165 Ind. 304, supra, it was held that such ordinances are violative of the constitutional provision which guarantees the equal protection of the laws. It was there said that what the Legislature cannot do, it cannot authorize a municipal corporation to do.

In our opinion the ordinance in question is subject to the objection that it may deprive persons of the equal protection of the laws, and that, though the city may have a most meritorious case, it cannot be based on that invalid ordinance.

The judgment is reversed. *White, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.