HOUCK *et al. v.* MINTON *et al.*

*(Nashville,* December Term, 1947.)

Opinion filed July 17, 1948.

RUTHERFORD & CROCKETT and J. VAULX CROCKETT, all of Nashville, for appellants.

CLAUDE CALLICOTT, of Nashville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his original injunction bill in the Chancery Court of Davidson County to restrain the Nashville Traffic Commission from making Church Street between 9th and 21st Avenues a one-way street, closed to westbound traffic, and for a decree declaring void a regulation of the Commission so providing for one-way traffic. Complainant Houck owns property abutting on Church Street and sues for himself and others who are similarly situated.

There was an application for an injunction and, following the filing of answers to the original bill and an amended bill, the same was heard by the Chancellor on oral argument and briefs of counsel. The record does not show that the cause was set down for hearing on bill and answer. Following a formal hearing the Chancellor denied the injunction and dismissed the bill.

An appeal was prayed for and granted and numerous errors have been assigned. The regulation complained of results from the rebuilding of the Broad Street viaduct, one block south of and parallel with Church Street. It is agreed that it is temporary and will be rescinded within a few months.

The bill charges that complainant's business is being greatly damaged by the action of the Commission and that the order is unlawful; it challenges the validity of Article 45, Chapter 246 of the Private Acts of 1947, as being an unlawful delegation of legislative power and in violation of Article 11, Section 8, of the Constitution of Tennessee. There was a general and specific denial in the sworn answer filed by the defendant of all material allegations in the bill.

The charter of the City of Nashville relating to the regulation of traffic by the Commission provides:

"For the purpose of making the city streets, avenues, bridges and viaducts more safe for pedestrians, motorists and others, and for the purpose of facilitating the flow of traffic thereon, the Traffic Commission is hereby vested with full and exclusive legislative authority to adopt and publish traffic regulations, including the erection of proper signs, necessarily or properly connected with or incident to the following:

"1. The location and times when parking shall be limited.

"2. Places where parking shall be prohibited entirely or only during certain hours.

"3. The establishment of stop sign controls for through streets or isolated intersections.

"4. The establishment of traffic signal controls.

"5. The direction in which traffic may use any street or portion of street.

"6. Restrictions on the size of vehicles using certain streets.

"7. The establishment of speed zones upon City streets where in the opinion of the Commission the safe speed of vehicle operation is less than thirty (30) miles per hour. When such zones are properly signposted, the speed indicated on the signs shall be the legal speed limit.

"Such traffic regulations, when adopted by said Commission, shall take effect five (5) days after they have been published in a daily newspaper in the City of Nashville and a certified copy filed with the City Clerk and with the Chief of Police. When so adopted and published they shall have the full force and effect of an ordinance and shall be enforced by the City Police Department. However, it shall be the duty of the City Council to provide by ordinance for the punishment of violators of such traffic regulations by fixing proper and adequate fines and penalties."

The Traffic Commission adopted certain rules and regulations to govern vehicular traffic in Nashville, pursuant to the authority conferred upon it, and the City Council later passed an ordinance fixing a penalty of not less than $2.00 nor more than $50.00 for the violation thereof. The Commission amended the "traffic code" by making Church Street a one-way street and it is this rule which is the subject of controversy in the present suit.

The Chancellor ruled that under the foregoing Private Act the Traffic Commission was an administrative agency and that it was limited by the provisions of the Act and the regulation complained. of was clearly within the authority conferred upon it. The Chancellor further held that the language in the Act which conferred upon the Commission "full and exclusive legislative authority to adopt and publish traffic regulations" was "nothing more than an administrative agency for the purpose of finding and determining the facts necessary to the carrying into effect and will of the legislature as expressed in the Act; that the word 'legislative' could have been omitted as it lends no force and effect to the authority given."

The Act is vigorously assailed in the assignments of error on the ground that it is an unconstitutional delegation of legislative authority and that the resolution adopted by the Commission, providing for the particular regulation, was an unauthorized legislative Act.

While the assignments of error are very numerous, we find it wholly unnecessary to discuss them separately. They relate to and embrace one determinative issue, *i. e.*, the authority of the Commission to make rules for the control and regulation of traffic.

The principal contention of complainant is that the governing or legislative authority of a municipality is confined to a single agency; that it cannot legislate generally by and through a city council and specifically through some other agency, such as a traffic commission or similar agencies. The defendants controvert this proposition and argue that "the Legislature may delegate the general legislative and police powers to one body such as the city council and may delegate specific limited and restricted legislative powers, such as the

power to adopt traffic regulations, to another legislative body.''

■ ■ We must dismiss at the very outset the complainant's contention that the Act violates Article 11, Section 8, of the Constitution as being class legislation. The City of Nashville exists as a municipality under a special charter. The general law of the State providing for uniform incorporation of towns has no application. The Legislature may enact as many special charters of incorporation as it pleases and no two may be alike as to the exercise of local governing authority. We think it is unnecessary to cite authority to support the foregoing well accepted principle.

■ The power to regulate and control traffic is a power that may be delegated to a municipality by the Legislature, or to some designated agency of such municipality. There is manifest error in the contention that the governing authority of a city, as to enforcement of some specific police power, must be exercised solely by a legislative council. The Legislature, if not forbidden by the Constitution, may delegate it to a Traffic Board or a Public Health Commission. The validity of any regulation by such agencies depends upon its reasonableness and whether or not it is conducive to the public health and safety of the community.

The agencies of government in a municipality vary in number and, singly or collectively, may be a part of its governing authority. Thus in 43 Corpus Juris, sec. 235, page 237, it is said:

''The name, number, and character of these boards, and their respective functions depend upon the charter of each corporation. Whether a corporation has one or more of these bodies, they are properly called govern-

ing bodies, and are all subject to the same legal rules and regulations.''

In discussing the exercise of municipal police powers by different agencies, it is said in 43 Corpus Juris, sec. 741, page 490;

''The nature of a municipal corporation, like that of other corporations of whatever kind or nature, is such that it cannot be seen, felt, or touched by the senses, but can act, and be recognized and identified only by means of its human agencies. In every municipality, whether created under general or special law, there is and necessarily must be a body or board, constituted and empowered to exercise the sovereign powers of government delegated to the corporation by the state; and in the larger cities may be found separate boards, each authorized to exercise distinct powers of government, as boards of education, of public works, of assessment and equalization, of fire and police, etc., all in addition to the council and distinct from it.''

In *Luehrman* v. *Taxing District*, 70 Tenn. 425, 436, the Court discusses certain forms of local government as follows:

''The history of municipal corporations in this and the mother country discloses quite a diversity of forms in their organization. The governing body has been single, double and even triple, and consisted of many or few members. It has sometimes been appointed by the crown or the Legislature, sometimes elected by the corporators under a more or less extended elective franchise, sometimes having power to fill its own vacancies, and sometimes being hereditary. Dill. Mun. Corp., secs. 8, 16.''

The learned Chancellor cited a number of cases in support of his opinion that the Act should not be stricken

down upon the theory that it was an unlawful delegation of legislative power. Whether it be a delegation of of legislative or administrative authority, the law is not so much concerned with the method of enforcing police power as it is in promoting the public safety.

When we come to consider the question of regulating traffic, especially within a congested area, it would be impossible to do so in many instances by a direct ordinance of a city council. In emergencies the public safety cannot wait for legislative action by a slowly moving legislative council; nor can the latter be expected to declare by ordinance what is a hazard to public travel in changing situations and conditions. It must be left to the sound discretion of some agency of the local government.

While the Private Act here assailed confers upon the Traffic Commission "full and exclusive legislative authority to adopt and publish traffic regulations," we hold that the authority is both administrative and *quasi*-legislative; that is, its rules and regulations have the force and effect of ordinances when ratified and approved by a general or specific ordinance of the City Council.

An examination of the record in the instant case shows that the Traffic Commission has not adopted any penal ordinance. In promulgating the rules complained of it performed an administrative duty and left it to the judgment of the City Council "to provide by ordinance for the punishment of violators of such traffic regulations."

Our cases are numerous wherein the question of the delegation of police power by the Legislature to subordinate agencies has been approved. The rules adopted

by them are sustained upon the sound theory that this is necessary to carry out "the purposes of a statute and various governmental powers for the more efficient administration of the laws." *McQueen* v. *McCanless, Com'r,* 182 Tenn. 453, 187 S. W. (2d) 630, 633, and cases cited. See *Bishop* v. *State,* 122 Tenn. 729, 127 S. W. 698, wherein the Court sustained a conviction for violating a rule by the Commissioner of Agriculture to prevent the spread of infectious diseases.

In *Tennessee Electric Power Co.* v. *City of Chattanooga,* 172 Tenn. 505, 114 S. W. (2d) 441, a power board was delegated unusual and extensive powers, *quasi*-legislative in effect, to control the operation of a power plant as an agency of the City of Chattanooga; it was authorized to fix rates, to compel the levy of a tax and to issue bonds, etc. See also *Knoxville Housing Authority* v. *Knoxville,* 174 Tenn. 76, 123 S. W. (2d) 1085; *Holliston Mills* v. *McGuffin,* 177 Tenn. 1, 145 S. W. (2d) 1, 2, 146 S. W. (2d) 357. In this latter case it was held that, "Before a reviewing court will declare a delegation of power unconstitutional, it must clearly appear that the power in question is purely legislative."

Counsel for the defendant has cited a number of cases from other jurisdictions sustaining the delegation of power to certain named persons and agencies to make rules for the control of traffic. The cases are in line with our own case of *McQueen* v. *McCanless, Com'r, supra,* that they are valid as tending to make the law effective. The general rule, to which we subscribe, is stated in McQuillin on Municipal Corporations as follows:

"But certain discretion may be vested in the police in the regulation of traffic on the streets, especially in the

48

congested parts of the City since this is viewed as administrative rather than legislative. If the rules and regulations adopted by the police under the authority vested in them by ordinance are within its express general purpose and tend to make the law effective, they are not objectionable as an unlawful delegation of power.''

■ We are not forced to the conclusion that the rules of the Traffic Commission are purely and exclusively legislative rather than administrative, even though the Act confers upon such Commission ''exclusive legislative'' authority. If the Act can be sustained upon the theory that the Legislature intended to prescribe administrative duties, it is our duty to so interpret it under the well accepted rule that its validity must be upheld if it is possible to do so.

■ Our conclusion is further justified by the fact that the rules are not in effect as the result of a penal ordinance by the Traffic Commission. The City Council of Nashville has undoubted authority to formally approve traffic rules by reference, and prescribe a penalty for their violation. They must, of course, be in aid of general law or ordinances enacted in the interest of public safety; and when so ratified, by fixing a penalty for their violation, they derive their force from the general ordinance of the municipality.

■ Responding now to the extended argument of complainant's counsel, and cases cited on the brief, we readily agree that legislative power may not be delegated. Most, if not all the cases cited by counsel relate to statutes or ordinances which confer upon highway commissioners and police officers arbitrary power to make rules, and expressly declare that it is a misdemeanor to disobey them.

In *Goodlove* v. *Logan,* 217 Iowa 98, 251 N. W. 39, 40, the Act, held to be invalid, conferred upon the State Highway Commissioner of Iowa the express power to make rules relative to "Traffic on Primary Roads." "A failure to comply with such rules, etc., shall be deemed a misdemeanor and shall be punishable accordingly."

In *City of St. Louis* v. *Allen,* 275 Mo. 501, 204 S. W. 1083, L. R. A. 1918 F. 1110, a city ordinance clothed the chief of police with such power. It provided a penalty for the failure to observe the voice, gesture, or direction of a police officer.

In the latter case the Court quoted with approval the following from *Mayor of Baltimore* v. *Radecke,* 49 Md. 217, 33 Am. Rep. 239:

"An ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void." [275 Mo. 501, 204 S. W. 1084.]

Another case is that of *City of Shreveport* v. *Herndon,* 159 La. 113, 105 So. 244, where a Commissioner of safety of the city was by ordinance given power to enact traffic rules. It was stricken down upon the ground that it was an unlawful delegation of legislative power. Also in *Thompson* v. *Smith,* 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, an ordinance was held invalid which authorized the chief of police to revoke a permit of any driver who, in his opinion, becomes unfit to drive an automobile upon the streets of the city.

We find no fault with the foregoing decisions but they furnish no authority for holding the Private Act here assailed to be invalid. The charter of the City of Nashville authorizes the control of traffic. Of course it is done by the metropolitan police. The Act amending the char-

ter creates the Traffic Commission and confers upon it power to make rules which are enforced, not by the Commission but by police officers. At no time has the Commission gone beyond the authority conferred upon it.

While a municipality has no inherent power to exercise powers under the common law, we think, in the matter of traffic control in emergencies, the courts should be liberal in passing judgment upon the acts of those whose duty it is to make our streets safe to the traveling public.

Contention is made that the Act provides no standard to govern the Traffic Commission in formulating rules and regulations, and for this reason the Commission has acted arbitrarily. The position thus taken is untenable. In *Matz* v. *J. L. Curtis Cartage Company,* 132 Ohio St. 271, 7 N. E. (2d) 220, 225, the question was presented and the Court said:

"There are many instances where it is impossible or impracticable to lay down criteria or standards without destroying the flexibility necessary to enable the administrative officers to carry out the legislative will; especially may such a contingency arise when the discretion conferred relates to police regulations. In such cases it has been held unnecessary to declare the policy of the law by establishing definite restrictions."

See also *City of Chicago* v. *Marriotto,* 332 Ill. 44, 163 N. E. 369, 60 A. L. R. 501; *Ashland Transfer Co.* v. *State Tax Comm.,* 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534, 546.

▆▆▆▆▆ We find no merit in the insistence that the Act failed to provide standards for the guidance of the Commission, nor can we uphold the contention that the rule, whereby Church Street was closed to westbound traffic, is invalid for want of notice to the complainant.

In 43 Corpus Juris, sec. 215, page 212, it is said: "Notice is not at common law a prerequisite to the exercise of the police power in case of emergency."

Finally, it is insisted by the complainant that "the Chancellor erred in failing to hold the said Private Act of 1947, Chapter 246, Article 45, invalid, and the regulation complained of, because the Traffic Commission has no power to provide a penalty and the City Council has not provided a penalty applicable specifically to said regulation."

In response to the foregoing, the complainant is in no position to raise the question until he has suffered a penalty. Furthermore, he filed his bill to enjoin the enforcement of the regulation before the City Council could meet, or be called to meet, to pass an ordinance ratifying the specific rule and providing a penalty. As we have heretofore pointed out, the City Council has by proper ordinance fixed a penalty for violating the rules of the Commission.

It would unduly prolong this opinion to make response to each and every contention made in counsel's elaborate brief. We have given careful consideration to every question and feel constrained to affirm the Chancellor's decree.