IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 7, 2003 Session

## ELEONORA KOGAN, D.D.S. v. TENNESSEE BOARD OF DENTISTRY

**Appeal from the Chancery Court for Davidson County**
**No. 02-976-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2003-00291-COA-R3-CV - Filed December 30, 2003**

_____

In this case we are asked to determine the type of notice required to be given a defendant in a contested case hearing before a state administrative agency. We determine that Tennessee Compilation of Administrative Rules and Regulations 13604-1-.06 applies and requires personal service, return receipt mail, or, in the event of evading service, personal service with a person at the parties' dwelling place. In the case at bar, service of notice of the new trial date was made through regular mail only. This method of service is insufficient. The decision of the Board of Dentistry is vacated, and the case is remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S. and FRANK G. CLEMENT, JR., J., joined.

Frank J. Scanlon, Nashville, Tennessee, for the appellant, Eleonora Kogan.

Paul G. Summers, Attorney General and Reporter; Sue A. Sheldon, Senior Counsel, for the appellee, Tennessee Board of Dentistry.

**OPINION**

Because we find service of the notice of hearing relative to the January 24, 2002 hearing before the Board of Dentistry to be ineffectual under Tennessee Compilation of Administrative Rules and Regulations 1360-4-1-.06, the decision of the Board of Dentistry resulting from the January 24, 2002 hearing must be set aside and the case remanded to the Tennessee Board of Dentistry for further proceedings.

A detailed chronology of events is necessary before we can properly address the sufficiency of service of the notice of hearing in this case.

Tennessee Code Annotated section 4-5-320(c) provides that no revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of the facts or conduct which warrant the intended action and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. Pursuant to this statute, the Assistant Attorney General, representing the Department of Health of Tennessee, on August 1, 2001, sent a letter to Appellant at her address at 3836 Taliluna Avenue, Knoxville, Tennessee 37919, advising her that an agency investigation had revealed that from January 28, 1992 until June 18, 1998 she had been prescribed drugs and narcotics in amounts which could have impaired or limited her ability to practice dentistry. This letter further asserted that she had failed to reveal this information in her license application of June 24, 1998 and that such facts were a violation of the Dental Practice Acts, Tennessee Code Annotated section 63-5-101 to 133. In the letter, she was afforded the opportunity to show compliance with all appropriate legal and regulatory requirements for the retention of her dental license and given a deadline of August 13, 2001 within which to reply. This letter was sent by certified mail but returned on September 10, 2001 as being "unclaimed".

On August 14, 2001 the division of health related boards of the Department of Health filed charges before the Board of Dentistry against Appellant charging her with unprofessional conduct, making false and misleading statements, and habitual intoxication or personal misuse of drugs, such charges being made pursuant to Tennessee Code Annotated section 63-5-124(a). A copy of these charges, along with a cover letter, was sent to Appellant by registered mail to the 3836 Taliluna Avenue address, and the return receipt was executed by Appellant. This Complaint notified Appellant that the hearing to consider the charges was set for September 20, 2001.

On September 7, 2001, counsel for the Department of Health forwarded to Appellant its list of potential witnesses to be called at the hearing. Included among the witnesses were Mary Lou Campbell and Donna Schmidt both of Knoxville. The return receipt was executed on behalf of Appellant on September 15, 2001.

Appellant obviously received both the charges and the witness list, as she promptly responded by letter of September 15, 2001 asserting her inability to attend the scheduled hearing to be held September 20, 2001 because of poor health, after which she launched into a broadside attack on everyone connected with the case.[1]

---

[1] Among her milder statements in the letter are:

> In addition, the uninformed, dishonest, and thieving witnesses you have contacted, such as Mary Lou Campbell and Donna Schmidt, who were both dismissed from their jobs by me for drug use and money laundering, respectively, are completely not credible as witnesses because they are both corrupt and dishonest.
>
> . . . .
>
> Your support of these obvious and illegal actions and the violation of my rights because of these

(continued...)

On September 13, 2001, counsel for the Department of Health filed a Motion to Continue the September 20, 2001 hearing and requested a resetting on January 24, 2002. Cause for this continuance was asserted to be that three subpoenaed witnesses for the state were scheduled to be out of town or unavailable for the September 20, 2001 hearing. A copy of this Motion together with a cover letter and proposed order granting the continuance and resetting the case on January 24, 2002 was sent by certified mail to Appellant at 3836 Taliluna Avenue but was returned "unclaimed" on October 16, 2001.

On September 21, 2001, Administrative Law Judge Bettye Springfield executed the Order granting the Motion for a Continuance filed by the State of Tennessee and reset the case for January 24, 2002. The "certificate of service" appearing over the signature of Janice Kizer of the Administrative Procedures Division of the Office of the Secretary of State also dated September 21, 2001, states the following: "The undersigned hereby certifies that a true and correct copy of this document has been served on all parties, by delivering same to them, or to their counsel, at their address of record, or by placing a true and correct copy of same in the United States mail, postage prepaid."

On December 27, 2001, Todd R. Kelley, Administrative Law Judge, entered an Order setting the case for hearing on January 24, 2002 and setting forth a schedule for exhibits, witness list, prehearing motions and briefs. The "certificate of service" on this letter, made by Sarah Weaver, Administrative Procedures Division of the Office of the Secretary of State, also under date of December 27, 2001, provides: "The undersigned hereby certifies that a true and correct copy of this document has been served upon all parties, by delivering same to them, or to their counsel, at their address of record, or by placing a true and correct copy of same in the United States mail, postage prepaid."

Two other documents appear as exhibits at the January 24, 2002 hearing relative to the notice question. First is a computer search of March 30, 2001 indicating that Appellant's correct address is 3836 Taliluna Avenue, Knoxville, Tennessee 37919. The second document is a copy of a page of the Knoxville, Tennessee telephone directory disclosing: "Kogan, Eleanora, 3836 Taliluna Avenue, 37919 - - - - - - 540-8863."

In summary, without regard to the pre-complaint letter of August 1, 2001, which was returned to the sender as "unclaimed," the record clearly shows that Appellant actually received the August 14, 2001 Complaint and the September 7, 2001 State's Witness and Exhibit List. The Complaint plainly disclosed the hearing date of September 20, 2001 and her expansive response of September 15, 2001 verifies that she was aware of the September 20, 2001 hearing and that she wished to have it continued on grounds of ill health.

---

[1](...continued)

actions shows that you stand with this Jewish-Democratic Coalition who is against the constitutional rights of all Americans, including myself. By pursuing this case, Mr. Tepley, knowingly you are now supporting a very progressive and destructive anti-Christian and anti-government coalition which can bring very serious consequences.

It is from this point forward that the notice problem develops. The Motion by the Department to continue the hearing from September 20 because certain State's witnesses were unavailable, together with the proposed order continuing the case and resetting it for January 24, 2001 and the cover letter disclosing the proposed new hearing date, is the first set of documents in the record disclosing the proposed new hearing date of January 24, 2001. The only service attempted upon Appellant was by certified mail to her 3836 Taliluna Avenue address, which attempt was returned to the sender as "unclaimed." The next document disclosing the January 24, 2002 hearing date was the September 21, Order of Administrative Law Judge Bettye Springfield that purported to be served by regular mail. The last document disclosing the January 24, 2002 hearing date was the Order of Judge Todd R. Kelley of December 27, 2001 that again purported to be served by regular mail.

Determinative of the notice issue is the applicability or the nonapplicability of Tennessee Compilation of Administrative Rules and Regulations 1360-4-1-.06(2) to the service on Appellant of notice of the rescheduled hearing of January 24, 2002. Appellee asserts that this regulation sets forth requirements governing the initial notice of hearing/notice of charges and does not apply to subsequent filings and orders. Appellee further asserts that Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.03 and Tennessee Code Annotated section 4-5-308 apply to everything occurring after the initial notice of hearing/notice of charges and specifically allow for service of such documents to be made by regular mail. If the position of Appellee is correct, the notice of hearing prior to the January 24, 2002 hearing, if properly mailed, is adequate since the record conclusively shows that the initial Complaint was served upon Appellant. Thereafter, use of regular mail to provide notice would be sufficient if, indeed, the proof of mailing of the September 13, 2001 Motion to Continue, the September 21, 2001 copy of the Order of Continuance, and the December 27, 2001 Order of Judge Kelley was adequate.

The difficulty with the position of Appellee is that we are not dealing with the sufficiency of the notice of hearing, but rather with the service of the notice of hearing. Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.05 deals with the commencement of contested case proceedings and paragraph (2) thereof provides: "Notice of hearing. In every contested case, a notice of hearing shall be issued by the agency, which notice shall comply with T.C.A. § 4-5-307(b)." The notice of hearing in this case does comply with Tennessee Code Annotated section 4-5-307(b) in that it contains a statement of the time, place, and nature of the hearing, and the right to be represented by counsel, along with a statement of the legal authority and jurisdiction under which the hearing is to be held with reference to the particular section of the statutes and rules involved. It also contains a short and plain statement of the matters asserted. However, neither this rule nor Tennessee Code Annotated section 4-5-307 have anything to do with service of the notice of hearing.

It is Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06, entitled Service of Notice of Hearing, that provides in detail the methods by which service of the notice of hearing must be accomplished. Unless that notice of hearing is included within the original complaint (as it was in this case as far as the proposed September 20, 2001 hearing is concerned), rule 1360-4-1-.06 does not involve the initial complaint. Nothing in the rules prevents the initial

complaint from, likewise, serving as a vehicle to deliver notice of hearing, provided that the initial complaint containing such notice of hearing is served on the respondent party more than thirty days prior to the hearing date as required by Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06(2). While the response of Appellant to the original complaint contained in her letter of September 15, 2001 indicated that she could not be present for the September 20, 2001 hearing and suggested that the hearing be postponed, no action was taken by the Administrative Tribunal on her request for a continuance, and, had such hearing been held in her absence on September 20, 2001, she would be in no position to complain about default having been entered against her or the hearing actually held in her absence. The continuance of the September 20, 2001 hearing, however, was granted because of the request of Appellee of September 13, 2001 on grounds of the unavailability of state witnesses. No provision of this rule or of the statutes under which the rule is promulgated, sections 4-5-219, 4-5-301(b) and 4-5-307 of the Code, relieves the agency of its burden relative to the service of a notice of the rescheduled hearing, as that burden is delineated by Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06(2), which provides:

> In any case in which an agency is initiating proceedings against a party by bringing charges, by attempting to take action against a license, or by other similar action, a copy of the notice of hearing shall be served upon the party to be affected no later than 30 days prior to the hearing date. Except as provided in paragraph (3) below, service in such a case shall be by personal service, return receipt mail or equivalent carrier with a return receipt; a person making personal service on a party shall return a statement indicating the time and place of service, and a return receipt must be signed by the party to be affected. However, if the party to be affected evades or attempts to evade service, service may be made by leaving the notice or a copy thereof at the party's dwelling house or usual place of abode with some person of suitable age and discretion residing therein, whose name shall appear on the proof of service or return receipt card. Service may also be made by delivering the notice or copy to an agent authorized by appointment or by law to receive service on behalf of the individual served, or by any other method allowed by law in judicial proceedings.

In the case at bar:
1.      There has never been personal service of anything.
2.      Service by return receipt mail was only effected as to the original Complaint and the State's Witness and Exhibit List prior to the scheduled September 20, 2001 hearing.
3.      Return receipt mail service was attempted as to the pre-complaint letter of August 1, 2001 and Appellee's September 13, 2001 Motion for a Continuance, but such attempted service was incomplete because the return receipt was not "signed by the party to be affected."
4.      If one assumes that Appellant was attempting to evade service, there is no evidence in the record that service was made "by leaving the notice or a copy thereof at the party's dwelling house or usual place of abode with some person of suitable age and discretion residing therein, whose name shall appear on the proof of service or return receipt card."

5.     There is no evidence that any agent of the respondent was ever served with either the September 13, 2001 Motion by the state for a continuance, the September 21, 2001 Order granting the continuance, or the December 27, 2001 Order of Judge Todd R. Kelley.

6.     There is no evidence of service "by any other method allowed by law in judicial proceedings."

Tennessee Code Annotated section 4-5-219 provides, in pertinent part:

> (a) The secretary of state, from time to time, shall adopt, in accordance with the rulemaking requirements of this chapter, model rules of procedure appropriate for use by as many agencies as possible.
> (b) The model rules shall deal with all general functions and duties performed in common by several agencies.
> (c) Each agency shall adopt as much of the model rules as is practicable. To the extent an agency adopts the model rules, it shall do so in accordance with the rulemaking requirements of this chapter.

Tenn. Code Ann. § 4-5-219(a)-(c)(1998). Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06 was adopted under the authority of Tennessee Code Annotated section 4-5-219. Generally, rules and regulations promulgated pursuant to statutory directive and not inconsistent with such statutes have the force of law. *Houck v. Minton*, 212 S.W.2d 891 (Tenn.1948); *Parkridge Hosp., Inc. v. Califano*, 625 F.2d 719 (6th Cir.1980). It is of no consequence that the notice provisions applicable to the hearing in this case are prescribed by administrative rule rather than by the statute itself. Such rules have the force and effect of law. *See U. S. v. Grimaud*, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); *Union Light Heat and Power Co. v. Pub. Serv. Comm'n*, 271 S.W.2d 361 (Ky.Ct.App.1954); *Homeowners' Loan Corp. v. Rawson*, 83 P.2d 765 (Wash.1938).

> The question of this delegation of authority has been much before the courts, and especially is that true in recent years by the enlarged powers conferred upon administrative boards and tribunals. The generally accepted rule governing such matters now appears to be that a legislative body may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the power to fill up the details, by prescribing rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect. In such cases the action of the Legislature in giving such rules and regulations the force of laws does not violate the constitutional inhibition against delegating the legislative function. The rule finds support in *Field (Marshall) v. Clark*, 143 U.S. 649, 12 S.Ct. 495, 505, 36 L.Ed. 294, wherein the Supreme Court said: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the

lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

*Williams v. State*, 176 S.W.2d 177, 183 (Tex.Crim.App.1943); *see also Rinehart v. Woodford Flying Serv.*, 9 S.E.2d 521 (W.Va.1940).

Addressing this rule, it has been said:

> We must first turn our attention to the state of the law in Kentucky. Administrative regulations of any kind which have been duly adopted and properly filed have the full effect of law. However, the authority of the agency is limited to a direct implementation of the functions assigned to the agency by the statute. Regulations are valid only as subordinate rules when found to be within the framework of the policy defined by the legislation.

*Flying J Travel Plaza v. Commonwealth*, 928 S.W.2d 344, 347 (Ky.1996). In a similar context the rule is stated:

> It is well settled that reasonable regulations promulgated pursuant to statutory authority have the force and effect of law.
>
> . . . .
>
> When a Government official or agency lawfully prescribes rules and procedures, these are binding on the government as well as on its citizens.

*Pearce v. Director, Office of Worker's Comp.*, 647 F.2d 716, 726 (7th Cir.1981)(quoting *Whelan v. United States*, 529 F.2d 1000, 1003 (1976)).

The Supreme Court of Tennessee has held:

> Of course, an administrative body of this kind which is given legislative power to make rules and regulations does not have the power to make a rule or regulation which is inconsistent with the constitutional provision or other law on the subject, and it does not include the authority to enact laws, or to make rules affecting or creating substantive rights. Said body though does have the power when it is given it by the Legislature to make rules and regulations and in exercising the power thus given it to adopt which rules and regulations as are necessary and reasonable in qualifying general contractors for a license. The only thing that it may not do in this particular is to act arbitrarily and capriciously. This making of reasonable rules and regulations is a delegated legislative power which the body may use so long as the rules and regulations are designed to carry out the duties imposed upon this body, the

Board for Licensing General Contractors, wherein these rules are made to effectuate the purpose of the Act creating the body which Act the body is administering. 16 C.J.S. Constitutional Law § 133, page 552; 11 Am.Jur., 955, § 240.

*Tasco Developing and Bldg. Corp. v. Long*, 368 S.W.2d 65, 67-68 (Tenn.1963). Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06 in no way contradicts Tennessee Code Annotated section 4-5-219 but, rather, is a subordinate implementation thereof.

It is also settled that when a statute requires a particular method for the service of notice, that method is exclusive. *See Payne v. State*, 12 S.W.2d 528 (Tenn.1928); *McDonnell v. Amo*, 34 S.W.2d 212 (Tenn.1931); *Dunn v. Alabama Oil & Gas Co.*, 299 S.W.2d 25 (Tenn.Ct.App.1956); *U.S. Life Title Ins. Co. v. Dep't of Commerce*, 770 S.W.2d 537 (Tenn.Ct.App.1988). Even if one concedes a presumption that a letter properly addressed, stamped and mailed was received in the course of such mail, such presumption has no application when confronted with a statutory mandate of a particular mode of service that does not include ordinary mail.

When a statute, such as here, or a contract requires notice by certified mail, no presumption of receipt arises from mailing by ordinary mail. The very reason for providing for certified mail or actual receipt is to avoid such a presumption. *Nat'l State Bank v. Terminal Constr. Corp.*, 217 F.Supp. 341, 355-56 (D.N.J.1963), aff'd 328 F.2d 315 (3 Cir. 1964), citing and distinguishing *Szczesny, supra.*

It is evident from the tenor of the Tort Claims Act that the Legislature considered the receipt of notice of fundamental importance (N.J.S.A. 59:8-3 to 11). For this reason, it required delivery, certified mail, or *actual* receipt. The dictionary defines actual as "existing in fact or reality." The care and detail with which the Legislature provided for notice shows clearly that it did not mean to leave proof of actual receipt to a presumption. It provided only two alternatives to certified mail–delivery and, as its equivalent, *actual* receipt. When the Legislature used the word "actual" it obviously did so to emphasize that there be positive and not presumptive proof of receipt.

That statutory requirements for giving notice in a particular fashion must be strictly followed is clear from the cases. *Hepner v. Lawrence Tp.*, 115 N.J.Super. 155, 161, 278 A.2d 513 (App.Div.), certif. den. 59 N.J. 270, 281 A.2d 532 (1971); *Harvell v. N.Y.C. Transit Auth.*, 49 A.D.2d 765, 373 N.Y.S.2d 14, 15 (App.Div.1975); *Jefferson v. Government Employees Ins. Co.*, 48 A.D.2d 855, 368 N.Y.S.2d 573, 574 (App.Div.1975); *Montez v. Metropolitan Transp. Auth.*, 43 A.D.2d 224, 350 N.Y.S.2d 665, 666-67 (App.Div.1974), app. dism. by the New York Court of Appeals, June 30, 1975.

Certified mail assures definite record proof of mailing. The official *Mailers Guide*, published by the United States Postal Service, says (at 28), "Certified Mail

service provides for a record of delivery to be maintained by the post office from which delivered. The carrier delivering the item obtains a signature from the addressee on a receipt form which is kept for two years." The statute provides for delivery, certified mail or actual receipt. Delivery and certified mail connote positive, not presumptive, proof; actual receipt can mean no less.

*Hammond v. City of Paterson*, 368 A.2d 373, 374-75 (N.J.1976).

The facts of this case indicate that Appellant may well have been trying to evade the service of critical documents. Tennessee Administrative Rules and Regulation 1360-4-1-.06(2), however, provides a specific means of serving the notice of hearing on persons who are attempting to evade service. The rule provides, "if the party to be affected evades or attempts to evade service, service may be made by leaving the notice or a copy thereof at the party's dwelling house or usual place of abode with some person of suitable age and discretion residing therein, whose name shall appear on the proof of service or return receipt card." There is no evidence in the record that this method of serving the notice of hearing was even attempted.

Since the notice of hearing prior to the January 24, 2002 hearing before the Board of Dentistry did not comply with the requirements of Tennessee Compilation of Administrative Rules and Regulation 1360-4-1-.06(2), it is not necessary to discuss shortcomings in Appellee's proof as to the actual mailings relative to service by ordinary mail. *U.S. Life Title v. Dept. of Commerce*, 770 S.W.2d at 541-42.

The decision of the trial court must be reversed, the decision of the Board of Dentistry resulting from the January 24, 2002 hearing vacated, and the case remanded to the Board of Dentistry for further proceedings.

While it is not necessary to consider the quality of the proof offered by the state at the January 24, 2002 hearing, it is well to observe that such proof may not be suffice as "substantial and material evidence" under the applicable standard of review. The investigator's testimony as to the Vivian Harris prescription consisted of the hearsay statements of a pharmacist. The testimony of former co-workers as to the behavior of Dr. Kogan was not tied to the use of prescriptive drugs.

With no person at the hearing to object the following occurred:

> Q. Were there any other parties you talked to or individuals you talked to, who you knew, who were also afraid of Dr. Kogan?
> A. I spoke with Vivian Harris quite a bit, and she also told me that - - she always obtained her medications from Walgreen's on Chapman Highway in Knoxville - - and she told me that Dr. Robinson called her, not too long before he got sick at the end of '98, and that - - Dr. Robinson called Vivian and told her that he was calling in a prescription for Eleonora Kogan at Walgreen's on Chapman Highway in her name, in Vivian's name - - and I believe that was for Soma - - and Vivian told

him, No, I don't like you doing that, Reuben, don't do it.  So Vivian didn't want to confront her.

. . . .

But this one particular day, getting back to the Vivian Harris, I was at Dr. Robinson's office and the phone rang, and it was the CVS Pharmacy calling from Western Plaza in about October of '98.  And it was the pharmacist there wanting to know, did we see Vivian Harris the day before, which we did not.  And they had someone there trying to pick up a prescription for Vivian Harris.

And I turned to (sic) phone over to Dr. Robinson, and it was Eleonora.  And I did hear him tell her, Don't be doing this; I told you not to do it; I told you not to go down there.  And then he started talking in Hebrew.

And Vivian Harris told me the reason she knew it was Eleonora Kogan was because the pharmacist and Vivian Harris were personal friends.  She knew her.  She knew that that was not Vivian Harris.

Also troublesome at the hearing were the observations of member of the board J. Glenn Greer in his interrogation of one of the state's witnesses.

DR. GREER:  On one of the examples you gave where they went to the pharmacy to get several different drugs but did not fill the Hydrocodone and he called and said you left this out - - why do you think that was not filled?

THE WITNESS:  I don't know if it was an oversight, or maybe they just hadn't had time to fill it.  I don't know.

DR. GREER:  I guess, really, what I was looking at, it just seems like a long trail of trafficking here between obvious individuals of which several parties were very accommodating for a very long time.

And I certainly don't think Dr. Kogan is more innocent or more guilty than the others, but I just find it strange that she winds up being the fall guy for the whole thing.

One other question is that you noticed her being an angry person.  Were there times in which you noticed an influence of drugs versus times that there was not an influence, dealing with patients, for instance?

THE WITNESS:  There were several times that she would be halfway cordial.  So I don't know.  I don't take those medications - - I can't - - so I don't know how they would make you react.  But she would seem to me that she was a little calmer, maybe at times when she was taking them.  I don't know.  A lot of times when I was around her, she was hostile.  And, you know, it was - - I didn't think that was a very good environment for patients to witness.

While the prescription drug profile relative to Dr. Kogan is, at least on the surface, suggestive of excessive use of drugs, little substantive proof is offered to suggest any excessive drug use that

affected the behavior of Dr. Kogan that would render her unfit for the practice of dentistry. Much of the shortcomings in the proof is doubtless attributable to the fact that no counsel for Dr. Kogan was present to offer objections. However, deficiencies in the proof are not material to our disposition of the case in view of the "notice of hearing" question and the fact that the case is going to have to be tried again on remand.

The judgment of the chancellor is reversed, and the decision of the Board of Dentistry vacated. The case is remanded to the Board of Dentistry for such further proceedings as may be necessary.

Costs of the cause are assessed to Appellee.

_____
WILLIAM B. CAIN, JUDGE